ROBERTSON *v.* RURAL SPECIAL SCHOOL DISTRICT No. 9.

Opinion delivered October 9, 1922.

1. SCHOOLS—AUTHORITY OF RURAL SCHOOL DISTRICTS TO ISSUE BONDS.
—Rural special school district bonds issued without the consent
of a majority of the legal voters granted at an annual school
meeting, in accordance with Crawford & Moses' Dig., § 8837, are
void, even in the hands of an innocent purchaser.

2. SCHOOLS—RURAL SPECIAL SCHOOL DISTRICT—EVIDENCE.—Uncontro-
verted evidence *held* sufficient to establish the existence of a
rural special school district.

Appeal from Conway Chancery Court; *W. E. Atkin-
son,* Chancellor; affirmed.

STATEMENT OF FACTS.

W. H. Robertson brought this suit in the chancery
court against Rural Special School District No. 9 of Con-
way County, Arkansas, to recover $1,200 and the ac-
crued interest on certain school bonds alleged to have
been issued by the said district, and to foreclose a cer-
tain deed of trust upon the property of said district to
secure the same.

W. H. Robertson was a witness for himself. Accord-
ing to his testimony, a part of his business is to buy
school bonds. He bought the bonds of Rural Special
School District No. 9 of Conway County, Ark., to the
amount of $1,200 from H. M. Noel & Co. of St. Louis,
Mo. He paid therefor the face value of the bonds and
accumulated interest to October 17, 1916, amounting to
$18.50. The witness thought that he was buying valid
bonds of the district at the time he purchased them, and
bought them in good faith. Noel & Co. buy and sell mu-
nicipal and school district bonds. Robertson made no
inquiry before purchasing the bonds to ascertain whether
they constituted a valid claim against the district, but
he had received the opinion of an Arkansas attorney to
the effect that the bonds were valid and constituted a
binding obligation against the district.

Noel & Company purchased the bonds from Gunter
& Sawyer on the 15th day of October, 1916, and paid

therefor the face value of the bonds and the accrued interest. The bonds were payable to bearer, and the mortgage was executed to the Central Trust Company of Chicago, Illinois, as trustee. Neither the bonds nor the mortgage were ever in the possession of said trustee, and it did not have anything whatever to do with the transaction.

There was also introduced in evidence a copy of the resolutions passed by the board of directors authorizing the issuance of said bonds for the purpose of erecting and equipping the school building of the district.

According to the testimony of the directors of the school district, they entered into negotiations with Gunter & Sawyer with regard to the sale of the bonds. Resolutions were passed by the directors authorizing the issuance of the bonds, and the bonds were executed by the directors. A mortgage was also executed by them on the real property of the district to secure the payment of the bonds. All these instruments were turned over to Gunter & Sawyer to be examined by their attorneys to ascertain if they were in proper form. Gunter & Sawyer were directed to hold the bonds until they were authorized to negotiate them by the directors. Gunter & Sawyer sold the bonds without authority from the school directors and converted the proceeds of the sale to their own use. The school district never received any of the money. The district refused to pay the interest on the bonds, or to recognize them as valid obligations against the district.

It also appears from the records of the county court of Conway County that an order was entered of record on June 3, 1916, establishing Rural Special School District No. 9. The record recites that the petition to establish said school district was presented to the county judge on the 9th of May, 1916; that said petition was signed by fifty-four qualified electors residing in the territory described in the petition, and asked for an election to be held for the organization of Rural Special School District No. 9. The record shows further that the county

judge ordered the election to be held on the 20th day of May, 1916, and that a majority of the votes cast at the election were for the establishment of the said school district. It was therefore ordered that Rural Special School District No. 9 be established and composed of certain territory, which is described in the order.

The chancellor found the issues in favor of the defendant school district, and from a decree entered in its favor the plaintiff has duly prosecuted an appeal to this court.

*Reynolds & Steel,* for appellant.

1. Appellant has made out a *prima facie* case, as conclusively appears from the evidence. Where a deed or contract is regular on its face, the competency and capacity of the parties to the contract are presumed. Possession of a note payable to bearer is *prima facie* evidence of ownership. 66 Ark. 310; 27 *Id.* 166.

2. Every officer is presumed to have done his duty, and those acting in the capacity of officers are presumed to have been authorized; also it is presumed that their acts are valid, and that the law has been complied with. 24 Ark. 402; 30 *Id.* 72; 49 *Id.* 449; 50 *Id.* 276; 25 *Id.* 311; *Id.* 219; 69 *Id.* 352; 45 *Id.* 298; 55 *Id.* 368.

3. Appellant was a *bona fide* holder, because he bought the bonds in good faith, before maturity, in due course of business, for a valuable consideration and without notice of any defects whatever in the bonds. 90 Ark. 93; 104 *Id.* 388; 94 *Id.* 100; 121 *Id.* 634.

4. The claim set up in the answer that the district never received any money for the bonds, would, if true, be a defense as between the district and Gunter & Sawyer, to whom it sold the bonds, but it is no defense as against the appellant, a *bona fide* holder. 90 Ark. 93.

5. The allegations with respect to fraud on the part of Gunter & Sawyer, are not sufficient to establish fraud, if proved, but, conceding the sufficiency of the allegation, the proof fails to establish it. Appellee has not met the

burden of proof required.    52 Ark. 224; 24 *Id.* 459; 27 *Id.* 500; 37 *Id.* 195; 105 *Id.* 697.

But, if the bonds were secured through fraud, as alleged, it would not avail as a defense in this case, because they are in the hands of an innocent purchaser.    3 R. C. L. 997, par. 207; 89 Ark. 132; 90 *Id.* 93; 98 *Id.* 602.    An innocent holder takes negotiable paper free from all equitable defenses not appearing on the face of the instrument.    90 Ark. 93; 94 *Id.* 100.

If one's own negligence influences and induces an act whereby an innocent man is injured, the negligent party must sustain the loss.    3 R. C. L. 998, § 208; 63 Ill. 321; 14 Am. Rep. 129; 3 R. C. L. (N. S.) 212, note.    See also, 3 R. C. L. 1007, § 216; 178 Fed. 53; 21 Mich. 415; 97 Tenn. 19; 36 S. W. 705.

*Strait & Strait,* for appellee.

1.    The bonds are void because their issue was never authorized by a vote of the electors of the district.    The district was organized on the 3rd day of June, 1916, by order of the county court, subsequent to the general school election held on the third Saturday in May, in that year; but the question of authorizing a bond issue to raise a building fund as required by law was not, and could not have been, submitted to the electors at that election, before the district was created or had any legal existence.    The bonds alleged to have issued bear date of July 15, 1916, months prior to the annual school meeting of 1917, the first election to which the question of issuing bonds for the construction of a school building, or levying a tax therefor, could have been submitted.    See sec. 8 Acts 1911, p. 141, amending Act No. 321, Acts 1909, p. 497.

2.    If the plea of being an innocent purchaser of the bonds were available to the appellant, the facts in the case clearly show that he could not have been an innocent purchaser for value, for he was chargeable with notice of the requirements of the law, and the transcript of the proceedings furnished him at the time of his alleged pur-

chase showed clearly and conclusively that the law had not been complied with, in this, that the certificate required by the above mentioned section did not constitute any part of the proceedings pertaining to the alleged bonds, was never furnished the lender nor ever filed in the clerk's office, and, in fact, could not have been, since no election was held.

The power of school directors is derived from the statute, and they can exercise no powers not therein expressly granted or which do not arise by fair implication. They can enter into contracts only in the mode prescribed by the statute, and the district is not bound if they proceed in a mode prohibited by the statute or enter into a contract which exceeds their powers. 95 Ark. 28; 94 *Id.* 583.

If a statute requires that a question be determined at an annual school meeting by the electors, they cannot determine that question at a special election held at another time. 49 Ark. 97. *Rural Special School District* v. *Pine Bluff,* 142 Ark. 279, settles the questions involved here against the contentions of appellant.

HART, J. (after stating the facts). The decision of the chancellor was correct. We need not decide whether or not Gunter & Sawyer had the authority to sell the bonds. Assuming that they had such authority, the facts in the record bring the case squarely within the rule announced in *Rural Special School Dist. No. 30* v. *Pine Bluff,* 142 Ark. 279, where it was held that bonds issued by the directors of a rural special school district without authority of a majority of the electors, are void, even in the hands of a *bona fide* holder for value. The statute provides that all school districts created under the act shall have the power to borrow money when a majority of the legal electors authorize it by vote at any annual school meeting. Crawford & Moses' Digest, sec. 8837.

The record shows that the rural special school district in question was organized on the 3rd day of June, 1916. This was after the annual school meeting which,

under the statute, is held on the third Saturday in May.
Crawford & Moses' Digest, sec. 8950.

The bonds were sold on the 15th day of October,
1916. This was before another annual school meeting
could have been held. Therefore, the record affirmatively
shows that the school district was organized and the bonds
sold during the year 1916, after the time provided by stat-
ute for holding the annual school meeting and before an-
other annual election could have been held. This shows
conclusively that no vote of the electors of the district was
had to authorize the issuance of the bonds, and it follows
that the bonds and deed of trust are void because they
were issued by the board of directors of said school dis-
trict without authority. But it is insisted that there is
nothing in the record to show that the defendant is a
rural special school district and that the burden is upon
it to establish that fact. We need not decide where the
burden of proof lies, for we are of the opinion that there
is an affirmative showing that the defendant is a rural
special school district, and that there is no evidence to the
contrary in the record.

As stated above, the district was organized in 1916.
At that time rural special school districts were estab-
lished under procedings had before the county judge.
*Rural Special School Dist. No. 6* v. *Blaylock,* 122 Ark. 418.

It may not be out of place to state in this connection
that the General Assembly of 1919 amended the statute
so that the proceedings are now had before the county
boards of education. *Mitchell* v. *Directors of School
Dist. No. 15,* 153 Ark. 50.

In cases of cities and towns, the petition for the
establishment of the district would have to be filed before
and presented to the mayor of such city or town. Craw-
ford & Moses' Digest, sec. 8827.

Here the petition was presented to the county judge,
as required by the statute regulating the creation of rural
special school districts, and the district was designated as
Rural Special School District No. 9, as required by the

statute. Crawford & Moses' Digest, secs. 8831-8834. These facts make an affirmative showing from the record that the defendant is a rural special school district.

It follows that the decree of the chancellor must be affirmed.