## DAVIS v. WHITE.

## Opinion delivered June 7, 1926.

1. EQUITY—WITHDRAWAL OF REFERENCE TO MASTER.—Under Crawford & Moses' Digest, § 7162, a court of equity has the discretion, after having referred a case to a master, to proceed to a decision before the coming in of the master's report.

2. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY OF URBAN DISTRICTS TO ISSUE BONDS.—Under Crawford & Moses' Dig., § 8984, giving urban school districts authority to issue bonds, such districts may issue bonds without consent of a majority of the legal voters; and where they have done so, and have received the contract price, they are estopped to question the legality of the transaction.

3. SCHOOLS AND SCHOOL DISTRICTS—ISSUANCE OF BONDS WITHOUT ADVERTISEMENT.—Though any person interested has a right to enforce the provisions of Crawford & Moses' Dig., § 8984, requiring bonds of urban special school districts to be advertised for 20 days, yet where bonds are issued without compliance therewith and the proceeds are received by the district, it will be estopped to assert its own default, as also will be its patrons.

4. SCHOOLS AND SCHOOL DISTRICTS—AUTHORITY OF PATRONS TO SUE.—Patrons of a school district have no greater right to sue to protect the interests of the district than the directors have, since their right to sue arises out of the directors' failure or refusal to act.

5. SCHOOLS AND SCHOOL DISTRICTS—PAYMENT OF PROCEEDS OF BONDS TO TREASURER.—Under Crawford & Moses' Dig., § 8987, directing the proceeds of a bond issue to be deposited with the county treasurer or to the treasurer of the district, payment of such proceeds to a *de facto* treasurer of the district was a payment to the district.

6. SCHOOLS AND SCHOOL DISTRICTS—RATIFICATION OF ORAL CONTRACTS.—Where a school district failed to require written contracts with teachers and where schools were taught without funds and without petition of the patrons authorizing same, but no objection was raised until the contracts were fully performed by the teachers and warrants were issued for their services, the contracts were ratified.

7. SCHOOLS AND SCHOOL DISTRICTS—FAILURE TO PRESENT WARRANTS
   IN 60 DAYS.—School warrants are not rendered invalid by failure
   to present them to the county treasurer within 60 days after
   issuance, as provided by Crawford & Moses' Dig., §§ 8981-2.

8. COSTS.—In an action by patrons of a school district to determine
   the legality of bonds and warrants issued by a school district, it
   was not an abuse of the chancellor's discretion to assess the costs
   against the plaintiffs, though a warrant for interest was held
   to have been illegally issued; such being a mere incident to the
   litigation and only a small part of the relief prayed.

Appeal from Fulton Chancery Court; *Lyman F. Reeder*, Chancellor; affirmed.

*Geo. T. Humphries, David L. King, John H. Caldwell* and *T. H. Caraway,* for appellant.

*H. A. Northcutt* and *Cole & Poindexter,* for appellee.

SMITH, J. This suit was begun by appellants, who pay taxes and reside in Mammoth Spring Special School District No. 2, against the directors of said district, the treasurer of the county, and the Citizens' Bank of Mammoth Spring, and certain other parties.

After much testimony had been taken, the court made an order, at the joint request of both parties, wherein a master was appointed to continue the taking of testimony and to make findings of fact on the issues raised. Testimony was taken from time to time, and, after the cause had been pending for about a year and a half, the Hanchett Bond Company, hereinafter referred to as the bond company, filed an intervention, in which it alleged that the district had issued certain bonds, which the bond company had purchased, and that the district had defaulted in the payment of both principal and interest. The bond company prayed judgment for the unpaid interest and for the amount of the bonds which had matured and had not been paid. The appellants filed a response to this intervention and a cross-complaint, in which they alleged that the bonds had not been legally issued and were not valid obligations of the district, and it was prayed that these bonds be canceled. The bond company filed a demurrer to this response and cross-complaint, which was sustained by the court, whereupon appellants filed a

substituted response. Thereupon the bond company renewed its demurrer to the substituted response, and this demurrer was also sustained, and a decree was thereupon rendered in favor of the bond company requiring the district to pay the bond company the matured part of the bonds and the interest.

We will not review the immense record in the case, as the court appears to have found in favor of appellants on the disputed questions of fact, but, after doing so, the court rendered a decree dismissing the complaint as being without equity, except that the court found that the district had illegally issued a warrant for $691.36 interest due the Citizens' Bank on warrants of the district which the bank had cashed, and the costs of the entire case were assessed against appellants.

The court made findings of fact which reflect what the issues were upon which the testimony was taken, as follows:

(1). Appellants are citizens and taxpayers, and as such brought this suit on behalf of the school district to protect what they conceived to be the interests of the district, as the directors of the district had refused to bring the suit.

(2). R. L. White is the county treasurer of Fulton County, as alleged in the complaint.

(3). C. W. Dixon was a director of said district and the secretary and acting treasurer of the school board, and the president of the Citizens' Bank at the time said bank cashed the various school warrants which had been issued by the district in paying the salaries of school teachers and for other purposes.

(4). That all the school revenues for the fiscal school year of 1919-1920 were paid out on warrants issued for the maintenance of said school, and, in the absence of sufficient funds on hands, and without a petition signed by a majority of the patrons of said district, the directors issued warrants covering the operating cost of the school for the year 1919-1920.

(5). Warrants bearing date 1920-1921 were also issued by the directors, although the school revenues collected for the maintenance of said school during the fiscal year 1920-1921 would be absorbed by the payment of warrants previously issued for the operation of the school, and in the absence of sufficient revenue for that school year, and without any petition signed by a majority of the patrons of the school district.

(6). That warrants dated during 1921-1922 were issued, although all school revenues collected for the maintenance of the school during said school year would have been absorbed in the payment of warrants previously issued for the maintenance of the school. These warrants had been cashed by the Citizens' Bank for the holders thereof at their face value. (A part of the relief prayed by the appellants was that these unredeemed warrants be canceled).

(7). That in 1922 the county treasurer paid on excessively issued and left-over warrants of 1919-1920 all the school revenues of the district collected and turned into the county treasury during the fiscal school year of 1922-1923, leaving nothing for the maintenance of the school during that year.

(8). That the bonds of the district, which had been issued and used in building an addition to the schoolhouse, were issued and sold without any election being held in said district for such purpose; were sold below par; the sale was not advertised; nor were any of said bonds registered with the county treasurer or indorsed by the State Superintendent of Public Instruction; and the proceeds from the sale of the bonds were never turned over to the county treasurer, but were delivered to and deposited with the Citizens' Bank and paid out in cash for building purposes.

(9). (a) Although said warrants were issued in excess of all available revenues on hand or contemplated for the respective fiscal school years during which same were issued, and (b) in the absence of petitions signed by a majority of the district patrons for the employment of

teachers for which said warrants were given, they are valid evidences of debt against said special school district, and due and payable as funds are collected and turned into the county treasury from year to year until said warrants are paid.

(10). That the school district made oral, instead of written, contracts with the teachers for whose services the warrants were drawn.

(11). And when said teachers were so employed there were no funds on hand with which to pay the teachers, and these contracts of employment were made without any petition signed by a majority of the patrons of the school district.

(12). Said warrants were not registered with the county treasurer within sixty days of their issuance.

(13). The teachers' contracts were not reduced to writing and filed with the county treasurer.

(14). The county treasurer paid out all the school revenues turned into his office from 1919 to 1923 without a copy of any contract of employment of teachers being filed in his office.

Upon these findings of fact, appellants insist that the bonds of the district should be declared void, and canceled; that the warrants anticipating the revenues of the district, which were cashed by the bank, should also be canceled; and judgment was prayed against the county treasurer and the sureties on his bond for the amount of warrants paid to teachers who had no written contracts, etc.

The court denied the relief prayed, except that it decreed the cancellation of the warrant issued by the district in payment of the interest to the bank on warrants which the bank was carrying.

The court found that the failure of the directors of the district to fully comply with the law in the issuance of the warrants, and in the issuance and sale of the bonds, were mere irregularities of procedure, which did not invalidate them; and that the county treasurer was not liable for paying out the revenues of the district to the

teachers; and also found that the directors were not liable for so issuing said bonds and warrants. Upon this finding of law and fact a decree was rendered in favor of the bank for the amount of the warrants held by it, less the one for interest, and, as has been said, a decree was rendered in favor of the bond company awarding it judgment for the amount of the matured unpaid bonds and interest.

It is insisted that the court erred in proceeding to a decision of the case before the coming in of the master's report. But we think it was within the discretion of the court to withdraw the reference to the master. Counsel for appellees say that the master had never qualified and had never entered upon the performance of his duties. But in any event his report, had he made one, would not have been binding on the court. Section 7162, C. &. M. Digest. Moreover, it appears that the court found the facts in appellant's favor.

For the reversal of the decree of the court below appellants first insist that the court erred in sustaining the demurrer of the bond company to the answer of the district to the intervention of the bond company, and in not canceling the bonds of the district, for the reason that the provisions of the statute on the subject were not complied with.

Appellants cite the cases of *Robertson* v. *Rural Special School District No. 9,* 155 Ark. 161, and *Rural Special School District No. 30* v. *Pine Bluff,* 142 Ark. 279, in which cases it was held that the school district bonds issued by the rural special school district, without the consent of the majority of the legal voters granted at the annual school meeting, and in accordance with § 8837, C. & M. Digest, are void, even in the hands of an innocent purchaser. It was so held in those cases as to such districts, because, under the statute conferring this authority on rural special school districts, it was provided that the power to issue bonds might be exercised only upon the vote of the legal electors at an annual school meeting. But Mammoth Spring Special School Dist. No 2 is not a rural

special school district, and did not derive its authority to issue bonds from § 8837, C. & M. Digest. Section 8984, C. & M. Digest, is the section of the statute under which appellee school district proceeded, and this section does not require, as a condition precedent to the issuance of bonds, the consent of the electors. *Milwee* v. *Board of Directors of Horatio Special School Dist.*, 105 Ark. 77. In other words, the affirmative vote of the electors is not required to confer this authority on the· urban special school districts of the State, which derive their authority to issue bonds under § 8984, C. & M. Digest. Having this power, and having exercised it, and having received from the purchaser of the bonds the contract price therefor, the beneficiaries of the transaction are estopped from questioning the legality of the sale.

It is true, of course, that while § 8984, C. & M. Digest, does not require an election to confer authority or power on urban special· school districts to issue bonds, it does prescribe the manner in which such bonds may be sold, and these provisions cannot be treated as being directory. They are in fact mandatory in the sense that any person interested in the issuance of such bonds or affected thereby would have the right, in an appropriate action, to require compliance with the provisions of this section before the district could issue or sell its bonds. This section contains the express limitation that the bonds issued shall not bear interest at a greater rate than six per cent. per annum, and a bond bearing interest greater than six per cent. would, to the extent of such excess, be void because of the lack of power or authority on the part of the board of directors to issue bonds bearing a higher rate of interest. But the bonds here sought to be canceled did not bear a higher rate than six per cent.

It is also provided in § 8984, C. & M. Digest, that the sale of the bonds shall be advertised for twenty days, and that the bonds shall not be sold for less than par, and, as has been said, any person interested would have the right to enforce compliance with these provisions of the statute. But these provisions, although mandatory, do not

relate to the power of the board of directors to issue the bonds, and, if bonds are issued (without collusion or fraud) without compliance with these provisions, the district is estopped, after receiving the proceeds of the bonds and using them, from asserting its own default. So also are the patrons of the district, who have no greater right to sue to protect the interests of the district than the directors have, and whose right to sue to protect the district arises out of the failure or refusal of the directors so to do.

In the case of *Arkansas Foundry Co.* v. *Stanley,* 150 Ark. 127, a taxpayer in an improvement district brought suit to enjoin the commissioners of the district from selling the bonds of the district below par, it being provided in the act creating the district that bonds might be issued, but could not be sold below par. We recognized the right of a taxpayer to bring the suit, and held that he would be entitled to the relief prayed, had the showing been made that the district was in fact about to sell its bonds below par. Relief was denied in that case, however, because it was only shown that the district proposed to pay a reasonable brokerage fee to negotiate the sale, and it was held that the district had this right, although this fee was paid out of the proceeds of the sale of bonds for which the purchaser paid only par.

So here appellants, had they proceeded before the sale was made, would have been entitled to enjoin the sale of the bonds if they were offered for sale without advertisement or at a price less than par and a reasonable brokerage fee. However, they did not do so, and it is now inequitable to grant the relief prayed, that of the cancellation of the bonds, after the district has received and expended their proceeds.

As to the allegation and finding that the proceeds of the sale of the bonds were not paid to the county treasurer, it may be said that the court also found that the district had a treasurer who was, at least, a *de facto* officer, and this officer received the proceeds of the bonds and deposited the money to the credit of the district in a bank

of which he was president, but the court found that this money had been regularly paid out on the warrants of the district, and had been used in the construction of an addition to the district's school building.

By § 8987, C. & M. Digest, it is provided that, where a school district has sold bonds, the proceeds thereof shall be deposited with the county treasurer, but this section has the proviso "that, when any district has a treasurer of its own, all money shall be paid to said treasurer, instead of the county treasurer." As the money was paid to an officer who was at least a *de facto* officer, and as this money was expended by the district in the enlargement of its school building, we do not think it can be said that the district did not receive the proceeds of the bond sale.

As to the warrants issued to the teachers, it may be said that, while the court found the fact to be that the teachers did not have written contracts as required by law, and while these contracts were not filed with the county treasurer, and while the schools were taught at a time when the school district had no funds with which to pay the teachers, and there was no petition on the part of the patrons of the school authorizing the schools to be taught, the fact remains that these questions were not raised until after these contracts had been fully performed on the part of the teachers and warrants had been issued to the teachers for the services performed. These contracts were therefore ratified.

In the very recent case of *Bald Knob Special School District* v. *McDonald, ante,* p. 72, we held that the authority conferred upon school directors in regard to employing teachers is limited to employment by written contract, and that, while an oral contract might be ratified, the ratification extended only to the portion of the contract which had been performed, and not to the entire contract, and that the district was liable only for the services actually performed. Here however the question arose over warrants issued to teachers for services completely performed. The warrants were issued after the schools had been taught, and were cashed without discount by

the bank, and the relief prayed is to cancel these warrants which are now held by the bank. The case cited is against the contention that the warrants are void because there was no written contract between the teachers and the district.

Upon the issue that the schools were taught when the district had no funds to pay the teachers, and this without a petition signed by a majority of the patrons of the school requesting that this be done, it may be said that the case of *Dell Special School District No. 23* v. *Johnson,* 129 Ark. 211, is decisive of the question. Upon this issue, the facts in that case are similar to those of the instant case, except there was a petition in that case to determine which of two teachers should be employed. The directors had agreed to employ the teacher receiving the highest number of favoring signatures. Neither petition circulated among the electors was predicated upon the fact that the district was without funds and that the petitions were intended to confer authority to have a school taught notwithstanding that fact. Johnson received a majority of favoring signatures, and was employed, but it was stated in the opinion "that there was no valid and binding contract made with the school board, but recovery is sought solely on the theory that the informal, verbal contract entered into between Johnson and the school board was subsequently ratified by the conduct of the school board and the patrons of the school in permitting Johnson (and his assistant, who had been paid by him), without objection, to teach the school for the full period of six months (the period of time covered by the verbal contract)." The right of the teacher to recover was upheld, and in affirming the judgment which he had recovered against the district we said: "The ratification in this instance was complete, because the directors had full knowledge of the operation of the school, and by their conduct expressed their acquiescence and favor. We must of course recognize the limitation upon this doctrine that a contract which was void in the beginning for want of power to make it cannot be ratified. (Citing cases)."

What was there said is equally applicable here, and we must therefore hold that by ratification the district has become liable on the warrants drawn in payment of the salaries of the teachers.

It is finally insisted that the warrants are void because they were not registered by the holders thereof within sixty days of the date of their issuance. This contention is based upon § 8981, C. & M. Digest, which reads as follows: "The order of any board of directors, properly drawn, after the passage of this act, shall be presented to the treasurer of the proper county within sixty days after it was drawn by the said board of directors. All such orders shall be paid in the order of their presentation; provided, this act shall not apply to school warrants registered prior to May 1, 1899."

Section 8982, C. & M. Digest, provides the procedure where warrants are not paid for the want of funds. It reads as follows: "If there are no funds with which to pay such order, the treasurer shall indorse the same: 'Not paid for want of funds,' giving the date and signing his name officially. He shall number and record each warrant in the book provided for such purpose, keeping a separate record for each district, and shall pay said warrants in order of their number."

We do not think the purpose or effect of this legislation was to render void the warrant of the district because of the failure to register it with in sixty days from its issuance.

By section 6250, Mansfield's Digest, the county treasurer was required to keep a record in which he registered school warrants presented for payment, and § 6255, Mansfield's Digest, reads as follows: "The order of any board of directors, properly drawn, after the passage of this act, other than those of single school districts in cities and towns, shall be presented to the treasurer of the proper county within sixty days after it was drawn by said board of directors. Provided that, if such order is not presented within the above specified time, it shall be

rejected and become null and void. All such orders shall be paid in the order of their presentation.''

This section 6255, Mansfield's Digest, was amended by act No. 70 of the Acts of 1885 (Acts 1885, page 107), and the amendatory act of 1885 was construed in the case of *School District* v. *Reeve,* 56 Ark. 64, in which it was held that the provision contained in § 6255, Mansfield's Digest, that school warrants should be void unless presented to the treasurer within sixty days after their issuance, had been repealed by the act of 1885. It appears therefore that the purpose of the act of 1885 was to repeal the law which rendered a warrant void if it were not presented to the treasurer within sixty days of its issuance, and the existing statute must be interpreted in the light of this prior legislation as construed in the case of *School District* v. *Reeve, supra,* Moreover, the warrants of special school districts in cities and towns were expressly exempted from the provisions of § 6255, Mansfield's Digest, invalidating warrants which were not registered within sixty days of their issuance.

We conclude therefore that the failure to register the warrants within sixty days did not render them invalid, and this failure can be taken into account only in determining the order of their payment, their payment being postponed until those of prior registration have been paid.

It is finally insisted that the court erred in assessing the costs of the case against appellants, plaintiffs below, inasmuch as the court granted relief to the extent of canceling a warrant which had been issued in payment of interest which the district had agreed to pay on other warrants which were outstanding. This was, however, a mere incident to the litigation, and was only a small part of the relief prayed. The chancellor had the discretion to adjudge the costs in the manner which he considered equitable, and we think no abuse of his discretion was shown.

Upon the whole case we find no error in the decree of the court below, and it is therefore affirmed.