RURAL SPECIAL SCHOOL DISTRICT No. 50 v. FIRST NATIONAL BANK.

Opinion delivered April 11, 1927.

1. SCHOOLS AND SCHOOL DISTRICTS—NOTES ISSUED WITHOUT AUTHORITY.—Holders of notes executed by a school board, not authorized to borrow money by a majority of the electors of the district, as required by Crawford & Moses' Dig., §§ 8837, 8840, acquired no rights.

2. SCHOOLS AND SCHOOL DISTRICTS—POWERS OF DIRECTORS.—One who deals with the board of directors of a rural special school district is bound to know what contracts the board is authorized to make.

3. SCHOOLS AND SCHOOL DISTRICTS—POWERS OF DIRECTORS.—A school district is a *quasi* public corporation and its directors can exercise no powers beyond those expressly conferred by statute or arising therefrom by necessary implication.

4. SCHOOLS AND SCHOOL DISTRICTS—POWERS OF DIRECTORS.—The powers and duties of school directors are derived only from legislative authority, and a contract entered into by them beyond the powers conferred on them by statute is null and void.

5. SCHOOLS AND SCHOOL DISTRICTS—UNAUTHORIZED CONTRACT OF DIRECTORS.—Notes executed by the board of directors of a rural special school district for money borrowed to erect a school building are void if not authorized by a majority of the electors at an annual school meeting, as required by Crawford & Moses' Dig., §§ 8837, 8840.

6. SCHOOLS AND SCHOOL DISTRICTS—VOID CONTRACT—RATIFICATION.—A rural special school district is not liable on notes executed by its board of directors for money borrowed without authority,

though the money was used to erect a school building, which was used by the district.

7. SCHOOLS AND SCHOOL DISTRICTS—MONEY LOANED TO BUILD SCHOOL HOUSE—LIEN.—Holders of notes executed by the directors of a school district without authority have no lien on the district's schoolhouse, in the construction of which the money was spent.

8. SCHOOLS AND SCHOOL DISTRICTS—VOID CONTRACT—RATIFICATION.— The board of directors of a rural special school district cannot ratify an unauthorized contract made by them.

9. SCHOOLS AND SCHOOL DISTRICTS—VOID CONTRACT—LIABILITY OF DIRECTORS.—Directors of a rural special school district *held* not personally liable on notes executed by them without authority from the electors of the district, since the payees had equal opportunity to know the law.

Appeal from Yell Chancery Court, Dardanelle District; *W. E. Atkinson,* Chancellor; reversed.

*A. S. Hays* and *J. B. Ward,* for school district.

*Herbert C. Scott* for bank, and *Clem P. Callans, J. W. Wilson* and *J. E. Chambers,* for H. M. Mitchell and other directors.

MEHAFFY, J.   The appellant is a special school district in Yell County, formed by the consolidation of District No. 48 and District No. 50, common school districts. A petition was presented to the county court and the election ordered and the district created under the provisions of the statute.   After its creation the directors who were elected qualified and acquired lands and erected a school building on the said lands.

The district entered into a contract with Clem P. Callans for the erection of the building for the price of $3,800.   The directors sold the buildings belonging to the common school districts 48 and 50, using the funds derived therefrom, and also, during the course of the construction of the buildings, used all of the funds belonging to the two common school districts at the time of the consolidation.

The question of erecting a school building was not submitted to the legal voters at an annual school election, and, without any authority from the legal voters, the district borrowed from the First National Bank of

Dardanelle $2,500 and executed note for that amount in the name of Rural Special School District No. 50, and this note was indorsed by the directors for said special school district.

After the completion of the school building the district executed note to C. P. Callans for $1,000, money which it borrowed from him. There was no authority from the legal voters to make either of these contracts, that is, no election authorized the district to borrow money.

Suit was brought on the notes by the First National Bank and C. P. Callans in the circuit court of Yell County, but was afterwards transferred to the chancery court, where it was tried. Suit was also brought by the same parties against members of the board of directors, and the two suits were consolidated and tried together. The chancery court found as follows:

"The court further finds that the $2,500 represented by the note to the First National Bank of Dardanelle was used by the directors in paying the said Callans on the contract price for said building, and the $1,000 note to Clem P. Callans was the balance due to him on the cost of erecting said building. The court further finds that the directors, at the time of making the contract and executing the notes sued on, were under the belief that they were authorized to make such contracts and to borrow said money, and that the house was economically built, and was worth the amount to be paid, and further finds that, after the completion of said building, the said school district used said building upon the said lands. The premises considered, the court holds that the note executed by and on behalf of the school district to the First National Bank in the sum of $2,500, of date of January 17, 1921, is null and void both as to the school district and as to each of the individual defendants whose names are indorsed thereon; and further holds that the note for $1,000 given to the plaintiff, Clem P. Callans, on January 20, 1920, is null and void both as to Special School District No. 50 and the individuals who signed

their names to said note as indorsers. And the court further holds that the plaintiff, Clem P. Callans, having done the work on said building to the amount of $1,000 for which he had not been paid, and the plaintiff, First National Bank of Dardanelle, had furnished money to the amount of $2,500 to pay for material and labor in said building; that the plaintiff, Clem P. Callans, and the plaintiff, First National Bank of Dardanelle, have liens upon said building which are superior and paramount to the claims of the district to said building, and that they shall have judgment for said amounts, together with 10 per cent. interest thereon from the date of their notes. It is therefore by the court considered, ordered, adjudged and decreed that the plaintiff, Clem P. Callans, have a lien upon said building in the sum of $1,512.33, being the principal and interest on the note of $1,000, date of January 20, 1920; and that the First National Bank of Dardanelle have a lien on said building for the sum of $3,477.28, being the principal and interest of their note of January 17, 1921, and that, unless the said special school district shall pay and discharge said lien within 90 days from this day, then the plaintiff may sell the building so erected by the said Clem P. Callans, and erected upon the land deeded to the said Special School District No. 50, and, if said building does not bring sufficient to pay both debts in full, then the price for which said building is sold shall be divided between the two plaintiffs in proportion to their respective debts; and the clerk of this court is hereby appointed commissioner to execute the decree of this court, and he shall sell said building upon a credit of three months, after giving notice for the time, place and terms of said sale by publication in a newspaper published in the Danville District of Yell County, for at least four insertions, and that the purchaser may remove said building from said ground within thirty days after said purchase; it is further by the court considered, ordered and decreed that the plaintiffs take nothing by reason of their suit against the individual defendants, H. M. Mitchell, J. A. Meeks,

John F. Foster, A. J. Gray, Jr., and R. S. McConnell, and that the defendant, Rural Special School District No. 50, pay the cost in this suit.   To which finding and decree of the court in declaring the plaintiffs, Clem P. Callans and the First National Bank of Dardanelle, to have a lien on the school building erected upon the lands belonging to said special school district superior and paramount to the interest of said school district in said building, the said Rural Special School District No. 50 at the time objected and prayed an appeal from said decree to the Supreme Court of the State of Arkansas, and which was by the court granted; thereupon the court ordered and directed the commissioner to make sale; that he shall take no action in carrying out the decree of the court during the pendency of said appeal, provided said school district shall have said building fully insured and preserve said building in a good state of repair, which the directors of said Rural Special School District No. 50 then and there agreed to do.

"To the finding and decree of the court in finding the defendants, H. M. Mitchell, J. A. Meeks, John F. Foster, A. J. Gray and R. S. McConnell, to be not liable upon said notes and discharging them thereon, each of the plaintiffs excepted and prayed an appeal to the Supreme Court of the State of Arkansas, which is by the court granted."

It is first contended by the school district that the notes executed by the school district are void.   This is a rural special school district, and is composed of territory of two former common school districts, each of which seems to have had a schoolhouse.   These school buildings were afterwards sold and this money, together with the funds of the district on hand at the time of the creation of appellant school district, was a part of the funds that went into the construction of the new building.

With reference to rural special school districts borrowing money, the law provides: "All school districts created under this act shall have the power to borrow money as any special or single district in cities or incorporated towns, when a majority of the legal electors

authorize it by a vote at any annual school election."
C. & M. Digest, § 8837.

Section 8840 of C. & M. Digest, among other things,
provides for borrowing money for building purposes if
authorized by vote of a majority of electors of the dis-
trict at any annual election. Every person dealing with
a school board is bound to know what the law is and is
bound by its provisions. When these notes were executed
the parties to whom they were made were bound to
know that the notes would be void unless the board of
directors was authorized by a vote of the majority of the
electors of the district at an annual election.

"A person contracting with a board of education is
presumed to know the limitations of its powers, and can
acquire no rights by a contract which such board is not
clearly authorized to make." *State* v. *Free,* 3 Ohio
Decisions, 314.

If there was no election held, or, rather, unless the
board of directors was authorized by a majority of the
electors of the district at an annual meeting, then the
holders of the notes acquired no rights, because the
board of directors was not authorized to make the con-
tract. And a person contracting with a school district
is bound to know what contract the board is authorized
to make.

"The trustee of a school corporation is a special
agent of limited powers, and it is incumbent upon those
who deal with him to ascertain whether he is acting within
his authority." *Union School District* v. *First National
Bank,* 102 Ind. 464, 2 N. E. 194.

"A person contracting with a school trustee is
bound to take notice of his official character, and that he
can only bind his township on contracts authorized by
law." *Bloomington School Township* v. *National Fur-
nishing Co.,* 107 Ind. 4, 43 N. E. 760.

It seems that the courts universally hold that, when
one deals with an agency like the board of directors of a
rural special school district, he is bound to know the
powers and limitations of such agency. Such is not only

the law as announced by courts generally, but this court has passed directly on this question.

"All parties dealing with public officials must take notice of limitations or restrictions upon their power. In this sense directors of a school district are public officials.  *  *  *  The reference appears in § 1 of said act 180, and is as follows: 'Provided further, that this act shall not be construed as authorizing any board of directors of any rural special or consolidated school district to issue bonds unless authorized to do so by the vote of the legal electors at the annual school election, as provided in act 321 of the Acts of 1909 of the General Assembly of the State of Arkansas.'  *  *  *  The court erroneously ruled that the bonds and mortgages were valid subsisting obligations in the hands of appellee against appellant district." *Rural Special School Dist.* v. *Pine Bluff*, 142 Ark. 279, 218 S. W. 661.

"The bonds were sold on the 15th day of October, 1916. This was before another annual school meeting could have been held. Therefore the record affirmatively shows that the school district was organized and the bonds sold during the year 1916, after the time provided by statute for holding the annual school meeting and before another annual election could have been held. This shows conclusively that no vote of the electors of the district was had to authorize the issuance of the bonds, and it follows that the bonds and deed of trust are void because they were issued by the board of directors of said school district without authority." *Robertson v. Rural Special School Dist. No. 9,* 155 Ark. 161, 244 S. W. 15.

This court again said: "Appellants cite the cases of *Robertson* v. *Rural Special School Dist. No. 9,* 155 Ark. 161, 244 S. W. 15, and *Rural Special School District No. 30* v. *Pine Bluff*, 142 Ark. 279, 218 S. W. 661, in which cases it was held that the school district bonds issued by the rural special school district, without the consent of the majority of the legal voters granted at the annual school meeting, and in accordance with § 8837, C. & M. Digest, are void, even in the hands

of an innocent purchaser. It was so held in those cases as to such districts, because, under the statute conferring this authority on rural special school districts, it was provided that the power to issue bonds might be exercised only upon the vote of the legal electors at an annual school meeting. But Mammoth Spring Special School Dist. No. 2 is not a rural special school district, and did not derive its authority to issue bonds from § 8837, C. & M. Digest. Section 8984, C. & M. Digest, is the section of the statute under which appellee school district proceeded, and this section does not require, as a condition precedent to the issuance of bonds, the consent of the electors. * * * In other words, the affirmative vote of the electors is not required to confer this authority on the urban special school districts of the State, which derive their authority to issue bonds under § 8984, C. & M. Digest." *Davis* v. *White,* 171 Ark. 385, 284 S. W. 764.

In construing the statute providing for transferring pupils to and from school, this court held that a contract made to transfer children of one district to the schools of another district was not only invalid but was not ratified by its performance. The court said: "But it is quite obvious that the legislative purpose was to provide means for the transportation of the children of any particular district to the schools of that district. The act says nothing about transporting the children of one district to the schools of another district, nor is any authority conferred to use the school funds to pay tuition in the schools of another district. No authority was conferred by the act of 1919 to make such a contract as was made with Free, nor does such authority otherwise exist, and, as the directors were without authority to make the contract, it has not been ratified by its performance." *Bd. Dir. Gould Spec. Sch. Dist.* v. *Holdtorff,* 171 Ark. 668, 285 S. W. 857.

"A school district is, by the statutes of this State, made a body corporate; but it is intended as an agency in the administration of public functions. It is a *quasi*

612 RURAL SP. SCH. DIST. 50 *v.* FIRST NAT. BK. [173

public corporation, and can exercise no powers beyond those expressly conferred by statute, or which arise therefrom by necessary implication. The powers and duties of the directors of a school district are derived only from legislative authority, and they can exercise no power that is not granted by statute. A contract entered into by the directors therefore, which is beyond the powers conferred on them by the statute to make, is null and void." *First Nat. Bank of Waldron* v. *Whisenhunt,* 94 Ark. 583, 127 S. W. 968.

The chancellor was therefore correct in holding that the notes were void.

The school district's next contention is that the school district cannot be held liable because of the fact that they have used the school building since the time of erection up to the present time. We think that the appellant is correct in this contention. As was said in the case of *First National Bank of Waldron* v. *Whisenhunt,* 94 Ark. 583, 127 S. W. 968, all persons who deal with school officials are presumed to have full knowledge of the extent of the powers of these officials to make the particular contract, and, in the case last mentioned, the court further said: "Neither the use of the maps in the school nor the failure to object would amount to ratification. * * * The payee of warrants and the appellant had all the means of knowledge as to the authority of the directors to make the contract that was possessed by the directors. Neither was deceived or misled into the making of the contract or the purchase of warrants."

It will therefore be seen that the parties contracting with the rural special school district in this case had all the means of knowledge as to the authority of the directors that the directors themselves had. Both of them were bound to take notice of the limitations of the authority of the board to contract. They were bound to take notice that a valid contract could not be made unless authorized by the legal voters at an annual election. They were bound to know that their contract was void.

It has been held by some courts that, where a contract is entered into by which a school district secures money and purchases property, the property, if of such character or nature as to be capable of removal without injuring the other property, they may remove the property. Especially is this held to be true in some courts, where the district purchased the property without authority and still has the property, and the property is such that it can be removed without injury to other property of the district.

It is not necessary, however, for us to decide that question in this case, because it is claimed here that the money went into the construction of the schoolhouse, and no lien is authorized by the Legislature under the facts in this case. It has also been held that, where bonds are issued by a school district in violation of law, or where the bonds were not authorized by law, the sureties on the bond are not liable, and no lien exists against the schoolhouse, since it belongs to the State. *Cooper v. H. H. Harder & Co.* (Tex. Civ. App.), 219 S. W. 550.

This court has said: "The directors have charge of the school affairs and educational interests in their district, and the care and custody of the schoolhouses, grounds and other personal property belonging to the district. But they have no power to purchase or lease in the corporate name a schoolhouse site, or to hire, purchase or build a schoolhouse with funds provided or to be provided by the district, unless thereunto authorized by a majority vote at the district meeting. * * * This want of power or authority cannot be supplied by the unauthorized acts of the directors or by any attempted ratification afterwards. It is apparent that, if the directors had no power to make the contract in the first instance, they could not subsequently pass a resolution ratifying their act. In other words, under the record in this case there could be no ratification by the directors, for they had no power to contract to build the schoolhouse by ratification or otherwise. It has been well said that the law never implies an obligation to do

that which it forbids the party to agree to do.   *   *   *
In the first place, it may be said that the land on which
the schoolhouse was built belonged to the school district,
and the use of the schoolhouse was inseparable from the
enjoyment of the land.

"Again, it may be said that, if the taxpayers of the
district could be made liable by the fact that the money
was used in the building of a schoolhouse, the statutory
prohibition, making it unlawful for a district to raise
money for building a schoolhouse unless due notice had
been previously given in the manner prescribed by the
statute, would be useless.   The limitation or restriction
imposed by the statute would be practically of no avail if
it could be brought to naught by the unauthorized act of
the directors, acquiesced in by the electors of the district.
The public, by such a doctrine, would be exposed to the
very abuse which the Legislature intended to prevent.
The statute in question was passed as an act of public
policy by the Legislature, and it would be a very unsafe
rule to establish to hold that school officers might bor-
row money without complying with the statute and bind
the district because it was used in constructing a school-
house and the house was afterwards used for school pur-
poses." *Ark. Nat. Bk. v. School Dist. No. 99,* 152 Ark.
507, 238 S. W. 630.

The above case, we think, settles the law on this
particular question.   As stated by the court in the last
case cited, the limitations or restrictions would be of no
avail if it could be brought to naught by the unauthorized
acts of the directors acquiesced in by the electors of the
district.   The above case is stronger than the present,
because there is no question here of ratification by the
voters of the district, and they are the only ones who
could ratify it if it could be ratified at all.   To hold other-
wise would be to make the statute of no effect, because a
board of directors could make a contract without sub-
mitting the question to the legal voters, with the knowl-
edge that it would not be authorized by the legal voters,
and make the district liable to the same extent that it

would be if the directors complied with the law. It would certainly be a very unsafe rule to hold that the statute might be violated by the board of directors doing the very thing that the statute says that they shall not do, and then enforce the contract as if there had been no violation of the statute. If this could be done the statute would be perfectly useless.

"It is well settled that those who deal with municipalities are bound to take notice and be bound by these constitutional restrictions. Accordingly it must be recognized that, in applying equitable relief in the present form of action, equity must not accomplish by indirection what the law has prescribed must not be done directly.

"In accordance with the stipulated facts, it is impossible to restore to the plaintiff the building erected without destroying property of the municipality. It is likewise impractical to segregate or detach that portion of the building which represents the excess moneys therein owing to the plaintiff. It is likewise clear that the imposition of a judgment to pay such amount, or the requirement that a rental be paid for that portion of the building represented by plaintiff's moneys unpaid, would impose a burden upon the school district in excess of the constitutional restrictions. * * * Although, in equity, recovery may be permitted in such cases, where no additional burden is thereby placed upon the municipality in excess of the constitutional debt limit, or where the property itself can be identified, segregated, and restored to the parties without injuring the municipality or its property by so doing, nevertheless, in upholding the constitutional restrictions absolutely imposed, relief upon equitable principles cannot be granted where this cannot be accomplished." *Bartelson* v. *International Sch. Dist.*, 43 N. D. 253, 174 N. W. 78.

"If the material furnished had been supplies which had been used, or had been property which had become so mingled with other property as to be not subject to identification, or have been so affixed as to be irremovable, that result might necessarily follow, because the plaintiff

would be without remedy. * * * The only question therefore is: To what extent shall plaintiff be permitted to remove his property? In our judgment, he should only be permitted to remove so much thereof in value as has not been paid for, and no more. Under the evidence as it now stands, however, we cannot say just what part of the property can be removed and what part cannot. Nor can we say what part of the property the plaintiff should be permitted to remove in order to prevent injustice. * * * In case, however, the parties cannot agree, as herein suggested, then to enter judgment permitting the plaintiff to remove so much of the property which can be removed without substantial injury to the building as may be necessary to compensate him for the unpaid purchase price, with legal interest, specifying the particular articles that may be so removed and fixing their value, as hereinbefore suggested." *Moe* v. *Millard County School Dist.,* 179 Pacific 980.

It will be observed, however, that our court, in construing the statute, has held that to permit parties to do indirectly what the law prohibits them from doing would make the statute wholly ineffective. We therefore conclude that there can be no lien had on the schoolhouse, and that it cannot be sold to pay the debt.

The only other question in the case, and that is in the case against the directors, is whether they are personally liable, since the contract they undertook to make for the district is void. Some of the authorities already referred to decide this question. We think this question has been settled by this court in *First Nat. Bank of Waldron* v. *Whisenhunt,* 94 Ark. 583, 127 S. W. 968, in which the court said: "The directors were only acting therefore as public agents, and, according to the intent of all the parties to the contract, with the purpose of expressly binding the district. They did not incur personal liability by signing their names thereto as directors. Nor are the directors personally liable because the contract was beyond their authority. * * * An officer who, in good faith and under misapprehension, makes a contract in behalf

of the municipality which is invalid for want of authority to make it, will not be held personally liable on the contract where the other contracting party has equal means of knowledge as to his authority."

We have already stated that the payees in the notes had equal opportunity to know the law with the directors, and it follows from what we have said in the case of Rural Special School Dist. No. 50 v. the First National Bank of Dardanelle and Clem P. Callans, the chancery court erred in holding that a lien could be enforced against the school building, and for this error the case must be reversed and remanded, with directions to dismiss the complaint. And the case of First National Bank of Dardanelle and Clem P. Callans v. H. M. Mitchell, J. A. Meeks, R. S.. McConnell, John F. Foster and A. J. Gray, Jr., must be affirmed, and it is so ordered.