PARK *v.* RURAL SPECIAL SCHOOL DISTRICT No. 26.

Opinion.delivered May 2, 1927.

1. SCHOOLS AND SCHOOL DISTRICTS—DISSOLUTION OF SPECIAL SCHOOL DISTRICT.—Refusal to enjoin the issuance of bonds by rural special school district created by Acts 1925, p. 876, until petition to the county board of education for dissolution should be determined, *held* not error, since the board had no authority to dissolve a special school district formed by act of the Legislature.

2. SCHOOLS AND SCHOOL DISTRICTS—DISSOLUTION OF SPECIAL SCHOOL DISTRICT.—The county board of education has no authority to dissolve a special school district formed by act of the Legislature.

3. SCHOOLS AND SCHOOL DISTRICTS—ISSUANCE OF BONDS FOR SCHOOL BUILDING.—The board of directors of a rural special school district *held* impowered to issue bonds for a school building after an election had been held as prescribed by Crawford & Moses' Dig., § 8840.

4. SCHOOLS AND SCHOOL DISTRICTS—BONDS FOR SCHOOL BUILDING.— Where bonds for school building are issued without authority of the electors in the rural special school district, created by Acts 1925, p. 876, such bonds are absolutely void.

5. SCHOOLS AND SCHOOL DISTRICTS—VALIDITY OF SALE OF SCHOOL BONDS.—The contract for the sale of bonds issued for a school building in a rural special school district *held* not to violate the statute prohibiting the sale for less than par value, because it provided for payment of a brokerage fee.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellant brought this suit for himself and on behalf of the majority of electors within the boundaries of appellee school district to restrain the issuance and sale of bonds by the said district. The complaint alleged that he with 123 other electors of the district, constituting a majority, had filed before the county board of education a petition for the dissolution of said district and given notice thereof as required by law. That the matter could not be reached and heard by said board before September 12, 1925; that, pending same, the said board was preparing to issue and sell bonds for the erection of the school building in said district; that said bonds were to be issued

for less than par, in violation of law; and that they were to be issued without authority, the question not having been submitted to the electors as provided for by law.

Demurrer was filed but not passed on, and the answer denied the allegations of the complaint.

The testimony shows that, after the petition for the dissolution of the district had been duly filed with the county board of education as alleged, an election was regularly held, on the date for holding the annual school elections, in Rural Special School District No. 26, Lonoke County, created by act 291 of the Acts of 1925; the 15 days' notice required by law first having been duly given, the place for holding the election being designated, the purpose of said election being stated in the notice as for electing a board of directors, etc., voting an annual school tax for said district and fixing the amount thereof, and "(3) for the purpose of voting a building fund for said district, and fixing the amount thereof."

The ballots printed by the board of directors of said district and furnished the electors, after the names of the candidates for school director and the terms, had printed thereon:

"For school tax for general purposes, 8 mills

Against school tax

For building fund, 4 mills

Against building fund."

The majority of the electors voting voted "For building fund, 4 mills," only three voting "Against building fund" the vote being 26 "For building fund" and 3 "Against building fund."

The result was duly certified, the board having made an order showing the result.

The board agreed to sell the bonds, $8,000 6 per cent. legally issued school bonds, for $8,000 cash upon delivery. The board made an agreement for the sale of the bonds to the American Southern Trust Company as follows:

"AGREEMENT.

"Little Rock, Arkansas July 24, 1925.

"To the Board of Directors, Rural Special School District No. 26, Lonoke County, Arkansas.

"Gentlemen: For your $8,000 6 per cent. legally issued school bonds, dated August 1, 1927, '29, '31, '33, '34, '35, '36, '37, '38, '39, '40, '41, '42, '43, '44, '45, being sixteen (16) bonds of $500 each, we will pay you on delivery at the American Southern Trust Company of Little Rock, Arkansas, $8,000 in cash. Interest on the bonds to be payable semi-annually on the 1st day of February and August in each year, at the office of the American Southern Trust Company, who will act as trustee.

"In making this proposal to accept the above bonds at par for 6's we are to be allowed a fee of $400 for brokerage and selling them.

"Your board will furnish the abstract of title to the property to be mortgaged, showing good title to the property in the district.

"Respectfully submitted,

"R. G. Helbron
"By R. G. Helbron."

"The above proposition is this, the 25th day of July, 1925, accepted as to all of its conditions by the board of directors of Rural Special School District No. 26, Lonoke County, Arkansas.

"By C. C. Rice, President,
"By J. C. Clements, Secretary.

"Jesse B. Shelton,
  B. C. Finch,
  S. A. Brown,
  J. H. Robertson."

A copy of the deed of trust showing the sum of the bonds to be issued was indorsed by stipulation.

The chancellor denied the relief prayed, dismissed the complaint, and from this decree the appeal is prosecuted.

*Reed & Beard,* for appellant.

*Chas. A. Walls,* for appellee.

KIRBY, J., (after stating the facts).   Appellant contends, first, that the court should have enjoined the issuance of the bonds by the school district until the petition to the county board of education for dissolution of the district was finally determined.   This contention is without merit, since that board had no authority to dissolve a special school district formed by an act of the Legislature.   *School District No. 25* v. *Pyatt Special School Dist.,* 172 Ark. 602.

It is next contended that the board was without power to issue bonds, not having been given authority to do so by the election held.   Section 3 of act 291 of the acts of 1925 provides:

"Said Rural Special School District No. 26 of Lonoke County, Arkansas, shall be governed by all the general laws of the State relative to rural special school districts and shall have all the rights, powers and duties now conferred upon rural special school districts to borrow money, to issue bonds and negotiable evidences of debt, to acquire a site for a school·building or school buildings, and to carry on the general business of said district, and the said board shall possess all other rights now exercised or possessed by. rural special districts under the general law governing said districts; provided, however, that, if·the board of directors of said Rural Special School District No. 26 of Lonoke County shall deem it necessary and to the best interest of said district to issue bonds or other negotiable evidences of indebtedness, prior to the annual school election to be held in May, 1925, it shall have power and authority to issue said· bonds or negotiable evidence of indebtedness in such sum as it finds necessary in order to properly construct and .equip a school building in said district, without submitting the question to the electors in said district, and said board shall have full authority to pledge such part of the annual school tax as may be necessary for that purpose. Any bonds or other negotiable evidences of indebt-

edness issued under authority of this act otherwise shall be governed by the general laws of the State relating to rural special school districts."

By the terms of this act the board of directors is given authority to issue bonds or other negotiable evidences of indebtedness, to borrow money for the construction of school buildings for the district, if done before the date of the annual school election to be held in May, 1925, without submitting the question to the electors of the district, and to pledge such part of the annual school tax as might be necessary for that purpose. If the bonds were not issued before that date, however, the board could only acquire authority to issue them by an election held under the general laws relating to rural special school districts, as provided in the last sentence of said § 3. Bonds issued without authority of the electors are absolutely void, of course. *Rural Special School Dist. No. 30* v. *Pine Bluff,* 142 Ark. 279, 218 S. W. 661; *Robertson* v. *Rural Spl. Sch. Dist. No. 9,* 155 Ark. 161, 244 S. W. 15.

Section 8840, C. & M. Digest, provides that rural special school districts shall have the power to borrow money for building purposes if authorized by a vote of a majority of the electors of the district. "Such vote may be 'For building fund' or 'Against building fund,' and shall state the amount of the building fund tax which the voter desires levied. * * * If a majority of the votes cast are 'For building fund' it shall be equivalent to voting a building tax of the amount or rate as determined by this section for each succeeding year until the money borrowed by the board of directors pursuant to such vote, together with all the interest thereon, shall have been fully paid. When a building fund has been specially voted for, as provided in this section, the board of directors may borrow money and mortgage the real property of the district as security therefor, under such conditions and regulations as to amount, time and manner of payment as the board of directors shall determine, and may, from time to time, renew or extend any evidence of indebtedness or mortgage issued or executed hereunder." * * *

This section also provided a form of a certificate to be issued by the board of directors to the lender of the money, showing the result of the election and the amount of the money borrowed, the terms of the loan, with the rate of interest, and that it is to be paid from funds arising from the amount of tax voted therefor, to be levied annually upon the property of the district.

This certificate is required to be executed in triplicate, signed by a majority of the board, which retains one copy, delivers another to the lender, and must file the third with the clerk of the county court, which court is required to levy, each succeeding year, a building tax of the rate voted for against the property in the district until the amount borrowed, with interest thereon, has been fully paid. Section 8841, C. & M. Digest.

This certificate is not the "bond or other evidences of indebtedness" authorized to be given for the money borrowed under said § 3 of act 291, already set out. Even if it could be held to be the form of bond or evidences of indebtedness intended to be required executed for money authorized to be borrowed by the election held under said section, which we do not think is the case, and is not necessary to decide, since the said act provides for the issuance of "bonds or other negotiable evidences of indebtedness" for the money borrowed upon the election held authorizing it to be done.

These bonds would ordinarily be issued in commercial form, as usual in the regular course of business, in accordance with the agreement between the parties, secured by the mortgage authorized to be executed, and the lender's copy of the said certificate required to be issued would necessarily be transferred to the holder of the bonds, as additional security and identification of the owner of the bonds, since the county treasurer is authorized to pay the money collected into the treasury from the tax levied for the building fund to the holder of the certificate upon demand.

It is finally contended that the contract for sale of the bonds is in violation of the statute authorizing the

money to be borrowed and the bonds issued, since it provides for the payment of a brokerage fee of $400 for sale of the bonds, which, appellant insists, amounts to a sale for less than par value and is an evasion of the law.

The statute gives the board of directors the power to issue and sell the bonds at not less than their par value, with interest thereon at 6 per cent., the prescribed rate, which carries with it the implied authority to pay a broker to sell the bonds or to assist the commissioners in doing so, when regarded necessary, and the payment of a reasonable commission is incidental to the express authority to sell coming fairly within the scope of the power granted, and does not constitute a sale at a discount, within the meaning of the law. *Arkansas Foundry Co.* v. *Stanley,* 150 Ark. 127, 233 S. W. 922.

We find no prejudicial error in the record, and the decree is affirmed.