(14 Misc. Rep. 41.)

PEOPLE ex rel. WEED–PARSONS PRINTING CO. v. PALMER, Secretary of State.

(Supreme Court, Special Term, Albany County. August, 1895.)

1. MANDAMUS—TO STATE OFFICER—PERFORMANCE OF CONTRACT.
      Mandamus will lie to compel the secretary of state to give relator certain public printing, the contract for which was awarded to relator, pursuant to Laws 1892, c. 683, § 72.

2. SAME—ADEQUATE REMEDY AT LAW.
      The rule that a writ of mandamus will not be issued where the party has another remedy does not always apply, but ministerial officers may be compelled to exercise their functions, though the party has another remedy against them by an action for neglect of duty.

Application by the Weed-Parsons Printing Company for a writ of mandamus to compel John Palmer, secretary of state of the state of New York, to give certain public printing to relator. Granted.

Rosendale & Hessberg, for relator.

W. E. Kisselburgh, Jr., Dep. Atty. Gen., for defendant.

FURSMAN, J. The defendant is a state officer. As such, the legislature has imposed upon him certain duties. So far as concerns the present application, these are to transmit to each county clerk in the state, at least 60 days before any general election, a sufficient number of copies of the election law to furnish one copy to each such county clerk, and one to each town, village, and city clerk, and each inspector of election in the county (Laws 1892, c. 680, § 19); to cause to be prepared a sufficient number of suitable blank books for lists and registers of voters, containing blank certificates and brief instructions for registry, and transmit a sufficient number thereof to furnish four to each board of inspectors in each county, except in the cities of New York and Brooklyn (Laws 1892, c. 680, § 40); to cause to be published title 10 of the Code of Criminal Procedure, relating to criminal statistics, with forms and instructions for the execution of the duties therein prescribed, and to furnish copies annually to each county clerk for distribution among the officers therein mentioned (Code Cr. Proc. § 946). He is also required, in connection with the comptroller, to give in each alternate year at least 20 days' notice, in two newspapers published in

each senatorial district, that, on or before a day to be specified in such notice, they will receive proposals for the public printing (other than legislative) for two years, and, in case a proper guaranty and satisfactory security are given, enter into a contract with the lowest bidder for the performance of such work. Laws 1892, c. 683, § 72. Pursuant to this law, the defendant, as secretary of state, and the comptroller, on the 3d of January, 1895, entered into a contract with the relator for the public printing (other than legislative) for the two years next after January 20, 1895. This contract is in conformity with the notice theretofore given, and embraces the public printing, other than legislative, "for the public offices of said state, and all printing for any and every of the state officers, their departments and offices," and contains an express stipulation on the part of the state that all printing and other work required by the act above cited to be done by contract with the state shall be given to the relator. After this contract was entered into, an appropriation was made for the payment of the printing above specified. Laws 1895, c. 937. The defendant has refused to give such printing to the relator. There is no question of fact involved, and the question is therefore one of law, whether, upon undisputed facts, the relator is entitled to a peremptory mandamus to compel the secretary of state to give the printing specified to the relator. Code Civ. Proc. § 2070.

It was not contended on the argument that the work demanded by the relator is not public printing, other than legislative, nor that it is not embraced within the contract, although in the affidavit of the deputy secretary of state it is stated that he (the deputy) is "informed and believes" that such printing is not covered by such contract; but the defendant declares that in December, 1894, "an agreement was entered into between the secretary of state's department and 'The Journal Company,' whereby that company was to print and deliver the books and copies of election law, etc., called for by sections 19 and 40 of chapter 680 of the Laws of 1892, and the forms and instructions required by section 946 of the Code of Criminal Procedure, and that said company has printed all of the election law, and has very nearly, if not quite, completed the printing of the register books." It is also made to appear that the secretary of state has now on hand, without resort to either the Journal Company or the relator, sufficient forms and instructions to enable him to comply with the requirements of section 946 of the Code of Criminal Procedure. The printing referred to is included within the requirement of section 72 of chapter 683 of the Laws of 1892, above referred to, and is covered by the contract with the relator. The legislature evidently intended to divide all public printing into two classes, the first of which should comprise legislative printing (Laws 1892, c. 682, art. 4), and the other embracing all other public printing. Thus, section 72 of chapter 683, above cited, declares: "The public printing payable by the state, other than legislative printing, shall be done as follows;" and then provides for the notice, bids, and contract above mentioned. The printing in question is not legislative printing, and is public printing payable by the state, for the payment of which the state has especially provided by the

act of 1895. It is required by express law for the use of public officers, to whom it must be furnished by the secretary of state, and is to be employed for the benefit of all the citizens of the state. There is no other authority for causing it to be done nor any other method provided for doing it than that prescribed by section 72. A public officer must perform, not only whatever duty is expressly imposed upon him by statute, but whatever is properly incidental thereto, in order to a complete compliance with the legislative intention. It is clear that the legislature intended that all public printing (other than legislative) should be done by contract, and that the contract for doing it should be such a one as is provided for by section 72. It was not meant that the secretary of state and comptroller should contract for only a part of it, and that the secretary of state should give out the remainder to be done by whomsoever he might select. That would be to defeat the whole object of this section, and to permit the major part of the printing to be done, not by the lowest bidder therefor, but by any one at any price in the discretion of the secretary. The secretary of state and comptroller have seemingly put this construction upon it by expressly declaring in this contract that "the public printing, other than legislative, for the public offices of said state, and all printing for any and every of the state officers, their departments and. offices," had been awarded to the relator. The several matters provided for by the laws above referred to are to be prepared by the secretary of state, and to be furnished by him to the various officers therein mentioned. This is the work of his department. The printing thereof is for his department, and the proper distribution of the same is among the duties required of his department. The whole matter is therefore provided for by section 72, and is covered by the contract. The fact that the defendant in December, 1894, agreed with the Journal Company for this printing, is not an answer to this application. There is no authority for such an agreement. The only agreement that can be legally made must be between the secretary of state and comptroller on behalf of the state and the lowest bidder giving approved security. It is not pretended that such agreement was made in pursuance of section 72, nor that the Journal Company was the lowest bidder for the work, nor that the comptroller had any part in making that agreement. It has been held that mandamus will lie to compel a secretary of state to furnish a copy of the laws to a person holding a valid contract for printing the same, notwithstanding the existence of a subsequent law providing for such printing by another party. State v. Barker, 4 Kan. 379; 14 Am. & Eng. Enc. Law, 146. And it has been held in this state that mandamus is proper to compel the performance of an official duty where such duty has been wholly omitted by the officer charged with the performance of it, where a right to require it exists in the party demanding it, and it is still possible of execution. People v. Schiellein, 95 N. Y. 124. By causing the work to be done by the Journal Company the defendant has by no means put it out of his power to comply with the terms of the contract. The agreement with it being unauthorized, that company must be left to find

its compensation elsewhere than out of the moneys appropriated by the act of 1895.

It is also contended by the defendant that this is an attempt on the part of the relator to enforce a private contract; that an adequate remedy at law exists if the relator is damnified; and that, therefore, mandamus is not a proper remedy. But this is not, in any just sense, a private contract. It is a contract entered into by state officers acting on behalf of a state, and in which the entire people of the state are directly interested. It relates wholly to matters of public concern, and affects private rights only so far as the statute confers such rights when its provisions are carried out by the officer to whom it is confided to perform them. A private act has been defined to be "an act operating only upon particular persons and private concerns." 2 Bouv. Law Dict. 374. So a private contract may be regarded as one between individuals only and affecting only private rights, while a public contract is one to which the state is a party, and which concerns all its citizens. This contract is of that kind, and the fact that individual rights are involved does not change its character. It is difficult to conceive of any contract, unless it may be such as might exist between states and municipalities, that must not necessarily affect private rights. Such a contract, where, as in this case, it is the creation of a public law, affects the whole body politic, and relates solely to matters of public interest, cannot be deemed a private contract. Moreover, this application is not so much to enforce a contract as to compel the performance of a public duty,—the duty of carrying into effect the intent of the legislature that the public printing shall be given to the lowest bidder, and thus procured at the least possible expense to the state. Nor is the general rule that a writ of mandamus will not be issued where the party has another remedy universally followed. Ministerial officers may be compelled to exercise their functions, though the party has another remedy against them by an action for neglect of duty. Buck v. City of Lockport, 6 Lans. 251; McCullough v. Mayor, etc., 23 Wend. 458.

In People v. Mead, 24 N. Y. 114, the court say (at page 120):

"But a right of action against the officer who ought to perform the duty can never be an answer to a motion for a mandamus to compel its performance, because, if this were so, the remedy would be taken away in nearly every case; for the right to an action for damages generally exists where a party is entitled to a remedy by mandamus against a ministerial officer."

See, also, Noble v. Railroad Co., 147 U. S. 170, 13 Sup. Ct. 271; Kendall v. Stokes, 3 How. 87.

The same principle must apply although there may be a remedy by procedure before the board of claims. In this case it is by no means certain that the relator has any other adequate remedy. It appears from the moving papers that the relator has acquired appropriate machinery and material, and has in its employ a large number of men, for the purpose of performing the work covered by its contract with the state. In a proceeding before the board of claims it could only recover the profits it would have made had it been permitted to perform the work, and in an action against the

defendant for neglect of duty a recovery must be for unliquidated damages, and it is not at all clear that in either case adequate compensation for the loss really sustained could be had. The duty of the defendant is ministerial. It is (in connection with the comptroller) to enter into the contract in relation to public printing required by law, to prepare the necessary material from which such printing is to be done, to deliver it to the party entitled to print it, and afterwards to distribute it as the law directs. The right of the relator is to have such matter prepared and delivered to it, to the end that it may perform its contract with the state, and receive the stipulated compensation therefor. The performance of this duty may be compelled and this right enforced by mandamus.

The writ should issue as prayed for, except as to the forms and instructions required by section 946 of the Code of Criminal Procedure, a sufficient number of which the defendant has on hand for distribution, as above stated; but, as the defendant is a public officer, no costs are allowed.

Ordered accordingly.