In the Matter of the Application of J. B. LYON COMPANY, Petitioner, for an Order of Mandamus against FRANK L. MORRIS, Superintendent of the Division of Standards and Purchase of the State of New York, and EDWARD J. FLYNN, Secretary of the State of New York, Respondents.

Supreme Court, Albany County, May, 1932.

*Rollin B. Sanford* [*John T. De Graff* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein* of counsel], for the respondents.

STALEY, J. In June, 1931, the State Division of Standards and Purchase received proposals for department printing for the ensuing

year beginning July 1, 1931. This printing was classified according to these proposals in seventeen groups, and the contract therefor was awarded to the petitioner for eight groups, to the Burland Printing Company for six groups, and the remaining three groups were awarded to other contractors.

The contract to the Burland Printing Company was assigned and transferred to the petitioner herein in February, 1932, thereby giving the petitioner the contract for fourteen groups of the department printing.

The contracts of the petitioner provided for the performance of all the printing work and the furnishing of all the printed supplies and material in accordance with the terms and conditions contained in the specification and proposal.

The specification and proposal, made a part of the contract, expressly states that department printing " includes the printing and furnishing of blanks, circulars, reports, pamphlets, bulletins, envelopes, letters and note-heads, and all other kinds of printed matter and materials *except such as are exempt by law*, or such as are defined by the Printing Law as legislative printing or the printing of the Session Laws." Paragraph 12 of the specification and proposal provides that " each bidder whose proposal is accepted will be required to deliver all printed materials of the kind which it is agreed to furnish which may be ordered for use by said departments and institutions of the State during the contract term. The printed material will be ordered from time to time in such quantities as may be needed. The statements as to quantities contained in the specifications and proposals are tabulated from the estimates made by departments and institutions and are given for information and to afford a basis of comparing and tabulating bids only, and *will not relieve the State of New York* of its obligation to order from the contractor all printed material that may be needed and of the kind fairly to be comprehended within the printing covered by the contract, and shall not, in any case, relieve the contractor of the obligation to fill all such orders for printed material which it agreed to furnish."

Detail for the bidding upon the work to be furnished under each group is comprehensive; some groups being general in character and others relating to the details of described work for designated departments.

The Division of Standards and Purchase on May 11, 1932, received proposals under specifications therefor for election supplies, which the Department of State is required by section 76 of the Election Law (as amd. by Laws of 1923, chap. 804) to furnish to the boards of election throughout the State. These supplies under

the proposals are required to be delivered on or before June 30, 1932, and consist of the printed material required to be furnished for the conduct of primary and general elections, including the blanks and books for the registration of voters, the tallying and canvass of votes, and the blanks and forms necessary to meet the requirements of law in relation to elections.

The particular proposal as issued by the Superintendent of Standards and Purchase requires each proposal, if accepted, to constitute a contract " to furnish all of the printed material described."

The petitioner herein seeks an order of mandamus commanding the Superintendent of the Division of Standards and Purchase and the Secretary of State to deliver to it the copy or material from which to print the election supplies as described in the specification and proposal for election supplies for the Department of State, on the ground that such work is included wholly or in part within the contracts now held by petitioner for the department printing. Such order is resisted by the State on the theory that the work of printing and furnishing the election supplies is not wholly or partly within the contracts of petitioner and that such work does not come within department printing as defined by the State Printing Law.

The issue is complicated only because of the practices and interpretations of the past, but clear and certain as to the intent and meaning of the statutes and contracts which control the present power and duty of the State and its rights and responsibilities thereunder.

Under the State Printing Law, public printing is classified in three parts — legislative printing, department printing and the printing of the Session Laws. Department printing is declared to include " all printing for the various offices, institutions and departments of the state, * * *." (State Printing Law, § 3, as amd. by Laws of 1922, chap. 643.)

The duty is placed upon the Division of Standards and Purchase, after public notice, to let to the lowest bidder " all contracts for the work embraced in the three several parts of this chapter defined, *except* printing done pursuant to law in the prisons of the State, in the State charitable and benevolent institutions for the benefit of such institutions, or by the board or commission having fiscal control of such institutions, the printing of examination question papers or printing done for the education department or the schools under its jurisdiction in the rooms of the

University of the State of New York by its employees, the stationery used by the Legislature, briefs and cases on appeal required by the attorney-general and bulletins issued by the Geneva and Ithaca experimental stations." (State Printing Law, § 4, as amd. by Laws of 1922, chap. 643.)

Section 3 of the State Printing Law, as enacted by chapter 507 of the Laws of 1901 and revised by chapter 60 of the Laws of 1909, which section became section 4 in the revision of 1917 (Laws of 1917, chap. 667), expressly exempted from department printing " the printing authorized by the Election Law " until 1922, when, by chapter 643 of the Laws of 1922, the exemption was stricken from the statute.

The elimination of this exemption is significant and clearly indicates in my judgment an intent on the part of the Legislature to include within department printing that which had previously been exempted by express terms.

Section 7 of the State Printing Law was likewise amended by chapter 643 of the Laws of 1922, and the definition of department printing was continued therein to include " all other printing work for the various departments and institutions of the State, other than the legislature  *  *  *."

Under this section, as amended, the Board of Estimate and Control█ may exclude such printing designated in this section as it deems proper and classify it as supplies, and pursuant to the section may advertise for and let separate contracts for such work.

A power of discretion is, therefore, vested in the Division of Standards and Purchase under this provision to exclude from the contract for department printing such work as may come within the particular designation contained therein.

Under the contracts now held by the petitioner there exists no evidence of any such exclusion. On the contrary, the contracts by their terms make the notice and proposal a part of the agreement of the parties. Department printing is therein defined as " *all kinds of printed matter and materials except such as are exempt by law,*" and the legislative printing and the printing of the Session Laws.

The printing authorized by the Election Law is not excluded from the contracts of the petitioner. Being neither excluded nor exempted, obviously it comes within the contracts which by their terms and the provisions of law under which they were made are most comprehensive.

The Attorney-General urges that section 76 of the Election Law, which directs that the Secretary of State shall purchase whenever he deems it desirable for the best interest of the State the election supplies designated therein and for the printing of which the Division of Standards and Purchase has recently received proposals, confers a power upon the Secretary of State or the Division of Standards and Purchase to contract for or purchase these printed election supplies independent of the provision of the State Printing Law or the contracts for department printing.

Prior to 1896 the printing required by the Election Law formed a part of the public printing contract. (*People ex rel. Weed-Parsons Co.* v. *Palmer*, 14 Misc. 41.) At that time the statute (Section 72 of chapter 683 of the Laws of 1892) covering State printing was general in its terms and contained no exemptions from " public printing."

By chapter 909 of the Laws of 1896, section 36, the Election Law provided that the Secretary of State " shall purchase *wherever* he deems it desirable for the best interest of the state " certain election supplies to be transmitted, with exemptions, to the county clerks. This statute was construed on the strength of its provision to purchase " wherever " desirable, to place the power to purchase such supplies in the hands of the Secretary of State. (*People ex rel. Weed-Parsons Co.* v. *Palmer*, 18 Misc. 103.)

By chapter 95 of the Laws of 1901 this section was further amended, the word " wherever " being changed to " whenever." At the same session the Legislature, by chapter 507 of the Laws of 1901, enacted the State Printing Law. Section 3 of that law exempted from that act " the printing authorized by the Election Law."

From 1896 to 1901 the election printing was apparently within the control of the Secretary of State because of the express statutory power to purchase same " wherever " desirable, and subsequent to 1901 because of the express exemption of this class of printing from the provisions of the State Printing Law.

By chapter 643 of the Laws of 1922, section 4 of the State Printing Law was amended by omitting the words, " the printing authorized by the Election Law," which previous to such amendment came within the jurisdiction of the Secretary of State because of express exemption from department printing under the provisions of section 76 of the Election Law.

The status of this printing work since 1922 has continued in that statutory condition — with the printing authorized by Election Law not exempted from the definition of department printing, with the Election Law providing that the same shall be purchased by the

Secretary of State "whenever" deemed desirable, and with the additional condition of a power of possible exclusion from the department printing by the Board of Estimate and Control and its successor, the Division of Standards and Purchase, under section 7 of the State Printing Law.

Powers and duties of public officers must be exercised in harmony with the general scheme and intent of governmental operation. The policy of the State, as expressed by its law, is that all public printing, except that expressly exempted or excluded, shall be performed and furnished by the lowest responsible and capable bidder, under the provisions of a contract obtained through the process of competitive bidding. That policy applies to all departments of the State. The fact that section 76 of the Election Law places a duty upon the Secretary of State to furnish certain printed material to the boards of election of the counties and cities of the State does not mean that this work shall be purchased contrary to the law and policy of the State but rather in accord with it. The power to purchase this work "whenever" deemed desirable by the Secretary of State or the Division of Standards and Purchase, in the absence of a definite act of exclusion from the department printing contract, is not entitled to the legal effect of lifting that work out of that contract.

"A public officer must perform not only whatever duty has been expressly imposed upon him by statute, but whatever is properly incidental thereto, in order to assure complete compliance with the legislative intention."

A contractor may compel by mandamus to have furnished the material and copy for work within his contract. (*People ex rel. Weed-Parsons Co.* v. *Palmer*, 14 Misc. 41.)

The Attorney-General contends that the provisions of section 8 of the State Printing Law (as amd. by Laws of 1922, chap. 643) give authority to let a contract for election supplies because they are not "specifically" mentioned in the department printing contract.

An examination of this contract and the proposal and specifications made a part of it shows that there is very little in the contract described other than in general terms.

"Specifically" is a relative term depending on the subject-matter.

While the department printing contract uses general terms of description, yet it is so detailed and comprehensive that it can be applied to innumerable subjects of printing without any doubt as to its precise applicability. All election printing is "specifically" covered by the printing contract. Only matters not within the

precise specifications are intended to be covered by section 8. To hold otherwise is to practically nullify the contract.

A peremptory order of mandamus may issue compelling the respondents to furnish to petitioner the copy and material for so much of the election supplies as comes within the groups of the department printing for which the petitioner now holds the contracts, with fifty dollars costs.