In the Matter of the Application of J. B. LYON COMPANY, Respondent, for a Peremptory Mandamus Order against FRANK L. MORRIS, Superintendent of the Division of Standards and Purchase of the State of New York, and Another, Appellants.*

Third Department, December 30, 1932.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General,* of counsel], for the appellants.

*Rollin B. Sanford* and *John T. DeGraff* [*John T. DeGraff* of counsel], for the respondent.

HILL, J. The Superintendent of the Division of Standards and Purchase of the State of New York and the Secretary of State appeal from an order of peremptory mandamus directing them to deliver to the respondent the copy and material from which to print certain election supplies for the year 1932. Section 3 of the State Printing Law classifies the State public printing " into three principal parts." We are not concerned here with the " first " and " third " parts. The " second " part is defined — " The

* Revg. 144 Misc. 9; appeal dismissed, 261 N. Y. 497.

second part shall be known as the department printing, which shall include all printing for the various offices, institutions and departments of the State, other than legislative, classified as department printing by the Board of Estimate and Control, pursuant to this chapter." The "three principal parts" of the public printing are to be let by the Board of Estimate and Control as provided in section 4 of the State Printing Law. " It shall be the duty of said Board, * * * to let to the lowest bidder, * * * all contracts for the work embraced in the three several parts in this chapter defined, except." Then follow certain items like examination papers, law briefs and agricultural bulletins which are not to be contracted. Until 1922 there was included among the exemptions " The printing authorized by the Election Law." These words were deleted by chapter 643 of the Laws of 1922 (amdg. State Printing Law [Laws of 1917, chap. 667], §§ 3, 4, as amd. by Laws of 1921, chap. 337). The department printing is classified by the Board of Estimate and Control (now the Division of Standards and Purchase)* as to size, material required, and numerous other details, and listed in groups lettered from A to Q, inclusive. Bids are accepted separately on each group. The respondent, either as original bidder or as assignee, held a contract with the State to furnish certain of the groups during the year beginning July 1, 1931, and ending June 30, 1932. If the election printing was included in the general printing contract, it fell among the groups let to respondent. It was not specifically mentioned, but was of the size and general description contained in the groups in respondent's contract. The appellant Superintendent invited bids for election printing for the year 1932 to be submitted on May 11, 1932. Among others, the respondent submitted a bid at a sum several thousand dollars less than it would have received had the work been done or the items furnished under the general contracts which it held with the State. However, it was not the low bidder, and the contract was about to be awarded to another at a figure substantially below respondent's bid. The respondent sought the mandamus order upon the assertion that the election printing was included in its department printing contract, and that the Secretary of State neither directly nor through the Superintendent of Standards and Purchase, had authority to let the separate contract.

The jurisdiction and the duty of the Secretary of State to enter into a separate contract for election printing was unquestioned until 1922. Section 76 of the Election Law in 1922 and at the time when bids were invited in 1932, directed that " The Secretary of State

* See State Dept. Law, § 15, as amd. by Laws of 1927, chap. 12; Id. § 54, as added by Laws of 1926, chap. 546.—[REP.

shall purchase, whenever he deems it desirable for the best interest of the State," the election printing and supplies involved in this proceeding. (See Laws of 1922, chap. 588, § 76, as amd. by Laws of 1923, chap. 804.) Respondent's argument, that the deletion (by chapter 643 of the Laws of 1922) of election printing from the items to be excepted from the general printing contract shows a legislative intent that such printing should be let with other department printing, is persuasive and would be conclusive except that other statutory authority for the exclusion exists. Section 7 of the State Printing Law (as amd. by Laws of 1929, chap. 618) says: " The Board of Estimate and Control may exclude from the department printing and classify as supplies such blanks, circulars, blank books, pamphlets, envelopes, letter heads and note heads, and similar printing, as it deems proper," and likewise in section 8 of the same law (as amd. by Laws of 1922, chap. 643), " Separate contracts may be made at any time * * * for any description of printing or of any article of stationery not specifically mentioned in the contract or contracts [those for general printing] and involving an expense of more than five hundred dollars." Election printing is not " specifically mentioned " in respondent's contract and the expense thereof is more than $500. The uncertainty as to the legislative intent occasioned by the deletion effected by the amendment of 1922 is clarified by the fact that each year thereafter the Legislature has included in the Appropriation Act an item for the Department of State to cover the expense of election printing. (For 1930, see chap. 85, p. 285, of the Laws of 1930; for 1931, see chap. 21, p. 193, of the Laws of 1931.)

Election printing has been the subject of a separate contract each year since 1922. The respondent has bid each year, usually with success, and has held each year the same contract for general printing as in 1932. This practical construction of these statutes, both by the State and respondent, sustains the letting of the separate contract for 1932. (*Story* v. *Craig*, 231 N. Y. 33, 40.)

The order should be reversed, with costs, and the petition dismissed, with fifty dollars costs and disbursements.

VAN KIRK, P. J., and CRAPSER, JJ., concur; RHODES, J., concurs in the result, with a memorandum; HINMAN, J., dissents, with an opinion.

RHODES, J. It seems to me the acts and conduct of the parties constitute a practical interpretation of the contract, as indicated by Justice HILL. I, therefore, concur in the result for reversal.

HINMAN, J. (dissenting). The general department printing contract held by the respondent contained the following provisions:

" Department printing includes the printing and furnishing of blanks *. * * and all other kinds of printed matter and materials except such as are exempt by law, or such as are defined by the printing law as legislative printing or the printing of the Session Laws." It also provides that " each bidder whose proposal is accepted will be required to deliver all printed materials of the kind which it is agreed to furnish, which may be ordered for use by said departments and institutions of the State during the contract term. Printed material will be ordered from time to time in such quantities as may be needed. The statements as to quantities contained in the specifications and proposals are * * * given for information and to afford a basis for comparing and tabulating bids only, and will not relieve the State of New York of its obligation to order from the contractor all printed material that may be needed and of the kind fairly to be comprehended within the printing covered by the contract, and shall not, in any case, relieve the contractor of the obligation to fill all such orders for printed material which has been agreed to furnish."

The Division of Standards and Purchase had the right to exclude the election printing from the general printing contract, under section 7 of the State Printing Law (as amd. by Laws of 1929, chap. 618), but it did not purport to exclude it. It expressly included everything " except such as are exempt by law " or legislative in character. The Division of Standards and Purchase had authority to make separate contracts for printing not " specifically mentioned " in the general contract, under section 8 of the State Printing Law (as amd. by Laws of 1922, chap. 643), but if the general contract provided for everything " except such as are exempt by law " or legislative printing, such a sweeping provision left no room for the operation of section 8 unless the detailed specifications did not cover the election printing. The detailed specifications in the general contract did precisely cover the character of printing required for the elections. Most of the departmental printing was covered in the same way and under the terms of the contract neither the State nor the contractor could be relieved of its obligation to order or to fill all orders for printed material covered by the contract specifications.

The fact is that the Division of Standards and Purchase and the Secretary of State have relied and still rely upon the right and duty of the Secretary of State, as matter of law under section 76 of the Election Law, to control the election printing and that the provisions of section 76 of the Election Law (as amd. by Laws of 1923, chap. 804) provide an exemption by law from the general department

printing contracts authorized by the State Printing Law to be let by the Division of Standards and Purchase.

So the proposition before us resolves itself into this: (1) The general department printing contract expressly covers everything of department printing unless exempt therefrom by law. (2) Is the election printing exempt therefrom by law?

I have covered the first phase of it. The second question is answered so well by the learned justice at Special Term in his careful analysis of the statutes that I need not add much to what he has said so clearly in his opinion, which is reported. (See 144 Misc. 9.) I agree with him that the legislative intent in 1922 was perfectly clear. That was shown not only by the deletion of the words " the printing authorized by the Election Law " from the exceptions recited in section 4 of the State Printing Law (as amd. by Laws of 1921, chap. 337, and Laws of 1922, chap. 643), but by another statute passed in 1922, which added section 117 (now section 111) to the State Finance Law. That new section was part of a new article, added by chapter 128 of the Laws of 1922, which gave control of purchase of supplies to a new Department of Purchase, now the Division of Standards and Purchase,* and that section of the State Finance Law expressly provided that " all provisions of statute authorizing or directing the purchase of any materials, equipment or supplies by any State department, board, commission, office or institution, or prescribing the manner of such purchase, are hereby repealed." The section was renumbered and amended by chapter 87 of the Laws of 1927, and again amended by chapter 608 of the Laws of 1930.

The Attorney-General in 1922 wrote an opinion (Report of Attorney-General for the year 1922, p. 133) holding that printed matter required by certain sections of the Election Law, other than section 76 of that law, constituted printing and that by virtue of the deletion of the election printing provision from the exceptions recited in section 4 of the State Printing Law, jurisdiction as to such printing was given to the then State Printing Board. He held, however, that the printing referred to in section 76 of the Election Law constituted " supplies " and that jurisdiction over that particular printing remained with the Secretary of State. It is clear that the Attorney-General could not have so held as to " supplies " if he had read the provision of the State Finance Law, added that year, which repealed section 76 of the Election Law so far as it might permit the Secretary of State to have control over

---

* See State Dept. Law, § 53, added by Laws of 1926, chap. 546, as amd. by Laws of 1927, chap. 87.— [REP.

the purchase of election printing on any theory that it constituted " supplies " rather than printing. His opinion was clearly erroneous as a matter of law. The State officers and Departments of course follow the opinions of the Attorney-General and they have continued to do so in this case, and if we are to give practical construction to these statutes by acts done under them since 1922, the fundamental basis of that construction must be the erroneous opinion of the Attorney-General in 1922. The situation became complicated in 1923 by an amendment that year (Chap. 804) of section 76 of the Election Law, requiring the Secretary of State to transmit to the various boards of elections for proper distribution to the election districts certain additional printed matter. The Attorney-General contends that this amendment shows a legislative intent to restore to the Secretary of State the authority to purchase the election printing, and being subsequent to the enactment of the State Finance Law provisions of 1922 repealing his authority, it superseded the State Finance Law provision. Reading section 111 of the State Finance Law and section 76 of the Election Law together, it is plain that they are inconsistent only in part. The Secretary of State is required, under section 76 of the Election Law, to provide the data for and obtain certain election supplies which have to be printed and to transmit this material to the boards of elections. This authority remains in effect. But the right to purchase this material has been removed from the Secretary of State and placed under the jurisdiction of the Division of Standards and Purchase. Moreover, if the latest expression in point of time of the legislative will should prevail, it is sufficient answer that section 111 of the State Finance Law was amended and re-enacted by chapter 608 of the Laws of 1930, by adding the words " officer or purchasing agent " and again repealing all provisions of statute authorizing the purchase of supplies " by any department, board, commission, office, institution, *officer or purchasing agent,* or prescribing the manner of such purchase," and placing such purchases entirely under the jurisdiction of the Division of Standards and Purchase. This re-enactment of section 111 of the State Finance Law came at a time when the Secretary of State, undoubtedly misled by the erroneous 1922 opinion of the Attorney-General, had recommended that election supplies be bought by the Superintendent of Purchase, the Secretary of State to furnish the Superintendent of Purchase the quantities and forms desired. In my opinion that was the precise requirement of law at the time, but if there was any doubt, the Legislature again clarified the situation by the said amendment.

So from 1930 to date, at least, there has been no justification for reliance upon the opinion of the Attorney-General rendered in 1922.

but it has stood unaltered and untested since it was rendered because the respondent, which has had the department printing contract, has also had each year the election printing. Even in 1929, the record shows that the respondent entered the competition for election printing but protested and reserved the right to insist that such printing came within its general department printing contract. It did not have to litigate the question that year nor in the year 1930 or 1931, because it obtained the election printing each year until 1932. Then it protested again before any contract was let and is now prosecuting the legal remedy which the law gives to it to determine its rights.

This history affords no basis for reliance upon waiver or practical construction of the statutes to sustain the position of the State. In the first place, where there is no ambiguity in contracts or statutes, evidence of practical construction is inadmissible. (*Schoonmaker* v. *Hoyt*, 148 N. Y. 425, 431; *East 46th Street Realty Corp.* v. *Gutschneider*, 186 App. Div. 503; *Johnson* v. *Hudson River R. R. Co.*, 49 N. Y. 455.) The statutes and contract in this case are not ambiguous. The legislative intent has been clear and the intent of the parties to the contract for general department printing has been shown to be to include all department printing unless exempt by law. The parties differed only as to their conclusions of law as to whether there was an exemption by law. The State was wrong in its interpretation of the law.

There is one thing left to consider. It has been urged that uncertainty as to the law is clarified by the fact that the Legislature has been inserting in the Annual Appropriation Act an item for the Department of State for election printing. There is no significance to be attached to that. An examination of the same appropriation acts for the support of government reveals that maintenance items for department printing are inserted in the same way for each of the other departments of the State, and are not accumulated or made items running to the Division of Standards and Purchase.

The issue is properly presented by an application for peremptory mandamus. No material fact alleged in the petition is put in issue by the answer. The denials in the answer are mere denials of conclusions of law and the construction of the written contract raises only a question of law.

I dissent and vote to affirm.

Order reversed on the law, with costs, and proceedings dismissed, with fifty dollars costs and disbursements.