NATIONAL SURETY CORP. *v.* EDISON

5-3835                                        401 S. W. 2d 754

Opinion delivered April 11, 1966
[Rehearing denied May 16, 1966.]

*Charles C. Wine, Raffaelli, Keeney & Pesek,* Texarkana, Texas, for appellant.

*John W. Goodson,* for appellee.

PAUL WARD, Justice. In separate actions, which are here consolidated, Weldon Edison and Woodrow Smith (appellees) recovered separate judgments against the National Surety Corporation (appellant), and this appeal follows. A brief statement of the background facts will help to understand the issues raised.

On February 13, 1963, at an election held in the City of Texarkana, Arkansas and in Miller County (pursuant to Act No. 48 of 1961) a bond issue in the amount of $11,000,000 was approved. The purpose of the bond issue was to erect and equip a building to be used for manufacturing purposes, to be located on land belonging to

the Texarkana Industrial Foundation, Inc.—a non-profit corporation. (Later the land was transferred to the City.) On June 12, 1963, H. K. Ferguson Company was engaged, as the prime contractor, to construct and equip said building. One week later the property was leased to the Cooper Tire and Rubber Company. On February 4, 1964 appellant executed a performance bond with General Millwright and Rigging Corporation which was a sub-contractor.

On February 18, 1964, appellee Edison leased certain equipment to the sub-contractor mentioned above, to be used in constructing the building. Edison was also employed by said contractor as job superintendent. A few days later appellee Smith likewise leased certain equipment to said contractor. The said sub-contractor halted operations on April 29, 1964 (before the job was finished) and on May 9, 1964, it definitely decided to do no more work.

Appellee Edison sued the prime contractor, the subcontractor, and appellant, asking $11,291.35 for rentals and wages and for penalty and attorney's fee. The trial court, sitting as a jury, gave him $4,968.45 for rentals, $169.45 for repairs, and $450 for wages. Appellee, Smith, was given judgment for $1200—being the amount sued for.

It is contended by appellant that the trial court erred in rendering judgment in favor of either appellee, because this was a *private* contract (as opposed to a *public* contract) and therefore appellant "is not liable for *rentals* under § 3 of Act 209 of 1957." For reasons hereafter discussed we are unable to agree with appellant.

The attorney for appellant, in the oral argument, commendably simplified the issues to be decided on appeal. It is admitted that if the contract here involved is a "public contract" within the meaning of those words as used in "section 1" of Act 209 of the Acts of

1957, then this case should be affirmed. It appears to us there is no doubt that appellant was correct in making the above concession, because of the language used in "section 3" of said act. The portion of said section which is pertinent here reads:

> " 'All surety bonds required by the State of Arkansas or any subdivisions thereof, any county, municipality, school district, or other local taxing unit. . . for the repair, alteration, construction or improvement of any public works, including but not by way of limitation, buildings . . . shall be liable on all claims for labor and material entering into the construction . . . shall include but not be limited to fuel oil, gasoline, camp equipment . . . rentals on machinery. . . . "

Any doubt that a "bond" is *required* in such case is removed by the language used in "section 1" of said Act 209.

Likewise, we feel that there is no doubt that the contract here involved is a *public* contract as opposed to a *private* contract. In arriving at that conclusion we take into consideration the legal background and the facts revealed by the record. It is now possible for cities and counties to entice industries to their localities by voting bonds to erect buildings to be leased to them on attractive terms. See: Arkansas Amendment No. 49 to the Arkansas Constitution. The legislature also wisely provided that proper construction of said buildings be secured by a bond. Act 261 of 1953 provides for such a bond, but it did not specifically include "rentals." Act 351 of 1953 likewise required a "bond" but "rentals" were, again, not specifically mentioned. It is perhaps significant that the emergency clause shows the legislature's desire to eliminate all "ambiguity" regarding such bonds. Then Act 209 (above quoted) not only required the "bond" to cover "rentals," but it also mentioned that "ambiguity" could delay construction of *public* buildings.

In the light of what we have said above, we think the record leaves no doubt that the "bond" in question here covered the construction of a "public" building. We can't imagine anything more public than an election to authorize the issuance of bonds in the amount of $10,000,000. It is true that the title to the land upon which the building was to be erected was in the name of "The Texarkana Industrial Foundation, Inc.," but it is admitted this was a non-profit corporation, and it is also admitted the title was transferred to the City of Texarkana five days after the rental agreement was made with the Cooper Tire and Rubber Co. It is also conceded all reports and rentals were to be made to the City.

It is our conclusion therefore that the record reflects not only substantial evidence but convincing evidence to support the findings of the trial judge, sitting as a jury. in favor of appellees.

We have carefully examined other questions raised in appellant's brief, but find in them no reversible error.

Appellee asks for an attorney's fee to be taxed as costs under Ark. Stat. Ann. § 66-3238 (Repl. 1966), and we approve the same in the amount of $500.

Affirmed.

GEORGE ROSE SMITH, J., concurs.

GEORGE ROSE SMITH, Justice, concurring. The surety bond given by the appellant recites that it is written in accordance with Act 351 of 1953 as amended. That act, however, expressly requires a bond only to secure indebtedness for "labor and materials." Ark. Stat. Ann. § 51-635 (Supp. 1965). Hence the appellant argues that it is not liable for claims for the rental of heavy equipment, as such claims do not represent either labor or materials.

I think the answer to this contention is that the city should have required a bond from the general contractor, under the mandatory provisions of Section 1 of Act 351, *supra*. § 51-632. In that event the pertinent provision of Ark. Stat. Ann. § 14-604 (Supp. 1965), which requires that the bond secure claims for rental of equipment, would have been read into the bond.

The city, however, failed in its duty to exact a bond from the general contractor. Instead the parties, apparently as a device to circumvent the statute, created a nonprofit corporation to go through the motions of letting the contract before transferring the property to the city.

When thereafter the appellant made the bond in question to indemnify the obligee, a subcontractor, against claims arising out of a sub-subcontract awarded to the appellant's principal, the appellant must have known that the bond was made in connection with construction falling within the scope of Section 1 of Act 351, cited in the bond. In the circumstances the provisions of § 14-604 ought to be read into the bond, just as would have been the case if the city had complied with the law. The dominant intention of the legislature was to require a bond when public construction is involved, for such projects are not subject to liens.