Boyce MARTIN, Raymond MORRIS, Kenneth CLARK, and Douglas MUSE *v.* Debbie FRAZIER, Gail THOMAS, Evonne SHARP, Bobby RHEW, Charles SAMPLE, Larry CRAWFORD, and Grayling WHEELER, as board members of the MIDLAND SCHOOL DISTRICT #19

86-206                                722 S.W.2d 835

Supreme Court of Arkansas
Opinion delivered January 26, 1987
[Rehearing denied March 2, 1987.*]

*Hickman, Hays, and Glaze, JJ., would grant rehearing.

*Murphy, Post, Thompson & Arnold*, by: *A.F. "Tom" Thompson* and *Blair Arnold*, for appellants.

*G. Ross Smith & Associates, P.A.*, for appellees.

DAVID NEWBERN, Justice. This appeal results from a dispute over closing a school. The Pleasant Plains and Floral School District consolidated by agreement, thus forming the

Midland School District. The appellants, residents of the former Pleasant Plains district, sought a declaratory judgment and injunction to prohibit the Midland board of directors from closing the Pleasant Plains elementary school. They contended the consolidation agreement prohibited the closing and that the interim Midland board which voted to close the school, was illegally constituted, thus making the decision void. They also contended that the board which replaced the interim board was illegally constituted and thus subsequent decisions effecting the closure were also illegal. The chancellor held that the closing of the school did not violate the consolidation agreement and that the constitution of the Midland board did not violate the governing statutes. We affirm with one modification.

## 1. The agreement

There was no factual dispute. The parties stipulated the terms of the consolidation agreement and that it was binding upon them. Each side argued the provision of the agreement governing the prospect of closing the Pleasant Plains elementary school was clear and unambiguous and favored its position, thus no parol evidence was presented. The governing clause in the argument was:

> It is the intent of the Floral School District and the Pleasant Plains School District that the consolidated district shall operate an elementary school facility, serving grades kindergarten through sixth, in the area now comprising the Pleasant Plains School District and the Floral School District. It is agreed that an attendance zone will be drawn for the new consolidated district, so that attendance at each elementary school will be approximately equal. It is further agreed that the consolidated district shall maintain ownership and control of all existing school buildings. Said buildings and campuses shall be maintained consistent with past practices and future educational needs. Buildings, other real property, equipment, supplies or other property deemed by the board of directors not to be needed may be disposed of.

In holding that this language permitted the closing at Pleasant Plains, the chancellor's memorandum opinion said he agreed that the board of the new consolidated district was

required to maintain two elementary schools at the outset. However, he said, the lack of a time limit combined with the language permitting maintenance of "buildings and campuses consistent with past practices and future educational needs" gave the board the authority to close the school.

The appellants argue that the lack of a time limit on the requirement that two elementary schools be maintained should be interpreted as meaning the parties to the agreement meant two elementary schools would be maintained "indefinitely." Yet they argue, citing *Dunn* v. *Forrester*, 181 Ark. 696, 27 S.W.2d 1005 (1930), that the lack of a specified time limit implies a "reasonable" time limit.

The agreement was entered between the two school districts May 14, 1985. It was approved at an election held June 18, 1985, to become effective July 1, 1985. The interim board of the new Midland district, on January 5, 1986, voted to close the Pleasant Plains elementary school effective in the fall term, 1986. As the appellants put on no evidence or stipulation with respect to the reasonableness of the board's action, we are hardly in a position to rule on whether the one year the school remained open after the new district was formed was reasonable or not. Moreover, we agree with the chancellor's reference to the language of the agreement permitting closing of "buildings and campuses" in accordance not only with past practices but with "future educational needs" as permitting the board of the new district to close the school.

## 2. The statutes

The statutes governing the composition of the board of directors of a newly consolidated school district are Ark. Stat. Ann. §§ 80-449 and 80-450 (Repl. 1980). They are, in pertinent parts, as follows:

80-449. Ballot—Results.

. . .

If a majority of the qualified electors voting on this issue in each district shall vote for the consolidation of the named districts under this Act, such vote shall be so certified to the County Board of Education of each affected

county. The new district shall be in existence on the date specified in the Agreement referred to in Section 5(e) [§ 80-450(e)] of this Act, as amended, provided if there is no such agreement the effective date shall be the first day of the fiscal year immediately following the date of the election. The members of the Board of Directors of the district consolidated shall serve as and constitute the Board of Directors of the new district until the next regular school election.

80-450. Board of directors—Election—Term. At the next regular school election following the creation of a new district under this Act [§§ 80-446—80-453] the qualified electors of the new district shall elect a Board of Directors for the new district.

(a) If the new district was created by the consolidation of two (2) former districts the Board shall be composed of eight (8) members, four (4) of whom shall be residents of each of the former districts. At the first meeting of the Board the four (4) members who reside in each of the former districts shall determine by lot the term to be served by each. One (1) of the four (4) members from each former district shall serve for a term of one (1) year, one (1) shall serve for a term of two (2) years, one (1) shall serve for a term of three (3) years, and one (1) shall serve for a term of four (4) years. Each year thereafter at the annual school election, the qualified electors of the new district shall elect one (1) successor member from each of the former districts for a term of four (4) years.

. . .

(e) Anything contained in this Section 5 [80-450] to the contrary notwithstanding, the Board of Directors of the former districts are expressly authorized to enter into an agreement, executed by the president and secretary of each district, prescribing the date the new district shall come into existence and/or defining the composition of the Board of Directors of the new district and prescribing the number of directors of the new district who shall reside in each of the former districts. Thereafter, the qualified electors of the new district shall elect successor members

from each of the former districts as prescribed by the agreement. An executed copy of the agreement shall be filed with the County Clerk of each county which contains territory or a portion of the territory of each district proposed to be consolidated at least ten (10) days prior to the election provided for by this Act. . . .

After July 1, 1985, the Midland board was constituted in accordance with paragraph 4 of the consolidation agreement which is as follows:

*4. Board of Directors.* The board of directors of the consolidated district shall be comprised of all members of the boards of both the Floral School District and the Pleasant Plains School District until the school election of 1986, at which time the board shall be composed of seven members, four of those members shall be from the former Pleasant Plains School District, and three shall be from the former Floral School District, each member to be elected by his respective board by a majority vote. Following the formation of the seven-member board, the seven directors shall continue to serve until the expiration of their currently existing pre-consolidation terms as directors of the consolidated district after which their positions . . . shall be open for election as such terms respectively expire. The qualified electors of the consolidated district shall elect successor directors whose terms have expired pursuant to this agreement and the terms of such directors shall be for five years. . . .

The appellants argue (a) that the interim board composed of the ten persons who had been members of the Pleasant Plains and Floral district boards (five each) violated § 80-450(e), (b) that the seven-member board which followed was unlawfully constituted because its members were not elected in the March, 1986, election, as required by § 80-449, and (c) that the seven-member board was unlawfully constituted because its members held five-year rather than the four-year terms required by § 80-450(a).

*a. The interim, ten-member board*

The chancellor held that the limitation to eight board members found in the third paragraph of § 80-450(e) applied to

the creation of the permanent rather than the interim board of the new district. The reason was that otherwise § 80-449, presumably the part stating that the interim board is to be composed of the members of the old boards, without limitation as to numbers, would become meaningless. He perceived his obligation to interpret both sections so that both would have meaning.

The chancellor was right. It would be wrong to construe §§ 80-449 and 80-450(e) in such a way as to make one of them ineffective if another construction is plausible. *Woodcock* v. *First Commercial Bank*, 284 Ark. 490, 683 S.W.2d 605 (1985); *Ragland* v. *Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985). Not only that, but we believe these statutes, read together, show the general assembly intended to give consolidating school districts as much leeway as possible, when they consolidate by agreement, to reach mutually satisfactory terms.

We have no difficulty harmonizing these statutes. Section 80-450(e) deals specifically with the new board to be elected. It says an agreement may prescribe the "number of directors of the new district who shall reside in each of the former districts" and says they may be elected as prescribed in the agreement. When it then provides that nothing contained in that subsection will allow creation of a board of more than eight members, that limitation applies only to the board to be elected. Section 80-449, on the other hand, deals with the interim board and places no limit, rather it says clearly the interim board will be composed of the members of the old boards. That is precisely what occurred.

### b. Lack of election

The chancellor held, we believe correctly, that once the two old school districts agreed on the manner of composing the new district's board, in accordance with § 80-450(e), the only requirements were that it be composed of eight or fewer members and that the terms of office be staggered. Thus he concluded that the procedure provided by the agreement, and followed by the new board, whereby the interim ten-member board would be pared to seven on the date of the first school election was proper.

The appellants' argument is that § 80-449, when combined with § 80-450 clearly shows that the board which comes into office after the interim board must be elected by the

electorate. Although § 80-449 says the interim board will serve until the first school election date, it does not say that the ensuing board members will be popularly elected. That comes in the first sentence of § 80-450 which is subject to the proviso of § 80-450(e) which says that, notwithstanding anything in § 80-450 to the contrary, the electors shall elect successor members "as prescribed by the agreement." The agreement provided that the first successors to the interim board would be elected by and from the interim board's members. That is the way it was done. There was thus no violation of either § 80-449 or § 80-450.

### c. Terms of office

The agreement provided for the interim or ten-member board to serve until the school election date. It provided that the seven board members then elected from among the original ten would continue to serve until their original respective terms expired. It further provided that those elected thereafter as successors would have five-year terms. The appellants argue that the trial court erred in holding that "the appellees" could serve five-year terms. Assuming the appellees are all members of the seven-member board which came into being in March, 1986, they would not be the board members upon whom the five-year terms were bestowed by the agreement. According to the agreement, it is the successors of the seven-member board whose terms are to be five years.

The chancellor held that the five-year terms were permissible, again because § 80-450(e) supersedes the rest of § 80-450 when there is an agreement. A careful analysis of § 80-450(e), however, leaves us with the opposite conclusion. Section 80-450(a), after setting forth the staggered terms of board members to be elected, absent agreement to the contrary, says:

> Each year thereafter at the annual school election, the qualified electors of the new district shall elect one (1) successor member from each of the former districts for a term of four (4) years.

After the "anything . . . to the contrary notwithstanding" clause, § 80-450(e) says an agreement may provide the date the new district comes into existence, the number of new directors to reside in each district, and the means of electing successor

members. It does not provide that an agreement may set the terms of the successor directors. Therefore, we hold that § 80-450(a) controls, and the terms of the successors to the members of the board shall be four years, and the chancellor's judgment is modified to declare that their terms shall be four years.

Affirmed as modified.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I respectfully take exception to the majority decision regarding its approval of the appellees' action that permits them to extend their terms in office without being elected by the voters of the newly-created Midland School District. The majority court, I submit, has gravely misinterpreted the relevant law that sets forth the election procedure which becomes operative after electors vote for the consolidation of their school districts.

The case is controlled by Ark. Stat. Ann. §§ 80-449 and -450(e), particularly as those sections were amended by Act 294 of 1969. These provisions contain the pertinent procedures to follow once consolidation is approved by the voters. The General Assembly specified the purposes and need for Act 294 in its emergency clause, *viz*, (1) to authorize the selection of a date upon which the proposed consolidation of school districts should take effect and (2) to authorize the new districts to establish the composition of the board of directors. Those provisions of Act 294 relevant to the situation before us are:

Section 1. [§ 80-449]

If a majority of the qualified electors voting on this issue in each district shall vote for the consolidation of the named districts under this Act, such vote shall be so certified to the County Board of Education of each affected county. *The new district shall be in existence on the date specified in the Agreement referred to in Section 5(e) of this Act*, as amended, provided if there is no such agreement the effective date shall be the first day of the fiscal year immediately following the date of the election. *The members of the Board of Directors of the district consolidated shall serve as and constitute the Board of Directors of the new district until the next regular school election.*

(Emphasis added.)

Section 2. [§ 80-450(e)]

(e) Anything contained in this Section 5 to the contrary notwithstanding, *the Boards of Directors of the former districts are expressly authorized to enter into an agreement*, executed by the president and secretary of each district, *prescribing the date the new district shall come into existence and/or defining the composition of the Board* of Directors of the new district and prescribing the number of directors of the new district who shall reside in each of the former districts. *Thereafter, the qualified electors of the new district shall elect successor members from each of the former districts as prescribed by the agreement.* An executed copy of the agreement shall be filed with the County Clerk of each county which contains territory or a portion of the territory of each district proposed to be consolidated at least ten (10) days prior to the election provided for by this Act.

Any agreement entered into pursuant to the provisions of this Section 5(e) shall provide for staggered terms for the members of the Board of Directors of the new district.

Nothing contained in this Section 5(e) however shall authorize the creation of a Board of Directors composed of more than eight (8) members. (Emphasis added.)

The former board members of the Pleasant Plains and Floral school districts met, as authorized by the foregoing provisions, in an apparent effort to enter into a valid consolidation agreement. In that agreement, they properly named the new district Midland School District #19 (Midland) of Independence County, and provided it would be in existence on July 1, 1985. They also, quite correctly, prescribed the composition and number of directors to serve on the new school district board. In this respect, they provided for seven members, four from Pleasant Plains and three from Floral. At this point, the former board members took action that not only varied from, but far exceeded the dictates of the law.

As I mentioned earlier, the expressed purpose or intent of Act 294—contained in the body of the law and in its emergency

clause—was to allow the former board members (1) to select when the new district commenced and (2) to establish the composition of the new district. The former board members did that, but additionally they erroneously prescribed in their agreement that all former board members from both districts would continue on the board of the new Midland district "until the school election of 1986", at which time the Board shall be composed of seven members, four of those members shall be from the former Pleasant Plains School District and three shall be from the former Floral School District, *each* member to be *elected by his respective Board* by a majority vote." Pursuant to this agreement, the former board members met and elected their successor to serve on the next board of Midland. Neither § 80-449 nor § 80-450(e) countenance a self-perpetuating board. Section 450(e) clearly provides that the *qualified electors* of the new district shall elect successor members. Section 449, accordingly, provides that these board members, serving on the new consolidated board, shall serve *until the next regular school election*— again, when the qualified electors would elect their successors.

The majority court appears to be misled by that part of § 450(e) that provides "the qualified electors of the new district shall elect successor members from each of the former districts *as prescribed by the agreement*." The court surmises this language allows the former members, serving on the newly consolidated board, the broad authority to elect their own successors. As I have pointed out, the law emphatically demands those successors be elected by the voters in the new district. If the law were otherwise, or especially as is suggested by the court, little certainty would exist concerning when or how these former or interim successors would be elected. Under the majority decision, for example, the former board members could enter an agreement that they could continue until the school election of 1999. Of course, I do not suggest this would happen, but the majority holding, I submit, permits such continuation in office without voter approval. Given only the direction that such interim board members can select their successors as however they may "prescribe by agreement", the manner of selection, or election if you will, is left to the whim or politics of each situation.

Maybe more importantly and to the point, I believe to give former board members such broad authority to choose their

successors far exceeds those expressed purposes for which the General Assembly passed Act 294. Act 294 provided for a board agreement to designate when the new district begins and how it will be composed, including the number of members who will serve. I agree with the majority that §§ 80-449 and -450(e), as amended by Act 294, give the former board members some leeway—in time at least—in establishing the new school district. Act 125 of 1961 was the original version of §§ 449 and 450, and that Act required the new district to commence immediately upon the certification of the election at which the voters approved consolidation. Act 294 permitted the former board members, by agreement, to extend when the new district must be in existence, but if no agreement was reached, the new district must be in existence by the first day of the fiscal year *immediately following the date of the election.* It becomes all too obvious to me that under each of the situations contemplated under Acts 125 or 294, the General Assembly intended the new district to be in existence before the regular annual school election following the consolidation election so the voters in the new school district can choose the interim board's successors.

Because I would reverse on the court's failure to require the interim board members' successors be elected by the voters, I need not discuss the other points treated in the majority opinion. Suffice it to say, that I believe the former board members' agreement also exceeded the law when it established the terms of office for successor board members.

HICKMAN and HAYS, JJ., join in this dissent.