# EAST POINSETT COUNTY SCHOOL DISTRICT NO. 14
## *v.* Marilyn MASSEY

93-450                                          866 S.W.2d 369

Supreme Court of Arkansas
Opinion delivered November 22, 1993

*Bill Bristow, P.A.*, for appellant.

*Mike Everett*, for appellee.

JACK HOLT, JR., Chief Justice. At issue in this case is the effect of legislation that resulted in the supplementation of the terms of a consolidation agreement between two school districts as to the election of school board members. We hold that the legislation did not impair the agreement between the two districts and that the trial court erred in finding otherwise.

On January 23, 1986, the Lepanto and Tyronza School Districts, under the auspices of Act 125 of 1961, entered into a consolidation agreement by which a new entity, East Poinsett County School District No. 14, was created. By a vote of 448 to 108 in Lepanto and 235 to 49 in Tyronza, voters in the old districts approved the agreement.

The consolidation agreement made the following provision for a board of directors:

> The board of directors of the consolidated district shall be comprised of all members of the boards of both the Tyronza School District and the Lepanto School District until the school election of 1987, at which time the board shall be composed of six members, three of which shall be from the former Tyronza School District, and three shall be from the former Lepanto School District, those positions remaining as active school board positions to be determined by a majority of the board of directors of the consolidated school district in sufficient time prior to the 1987 school election so as to provide for timely filing for

such positions. Upon the establishment of the six positions to comprise the board of directors of the consolidated district, the current board of directors, comprised of all the board members of the two districts prior to consolidation, shall determine the terms of each position, such positions to have staggered terms, in pairs, of one, two, and three years, respectively. Thereafter, all six positions will be up for election at the 1987 school election with two board positions to be on the ballot each year thereafter. The zones of board members in each of the two districts shall remain the same. It is the intent of this agreement that there shall at all times following the consolidation be three directors who reside in the current boundaries of the Lepanto School District. Vacancies on the board of directors will also be filled by area residents to insure the proportionate representation hereinabove stated. A director who moves his residence from the area in which he was residing at the time of his election or appointment shall be disqualified, and a vacancy shall exist on the board of directors.

The agreement also contained the following language regarding the applicable law:

The consolidation shall be effected, if approved by the electors of each District, in accordance with the provisions of Act No. 125 of the Acts of Arkansas of 1961, as amended and supplemented by other laws of the State of Arkansas.

Act 125 of 1961, which provided an alternative consolidation method for two to eight districts, was codified at Ark. Code Ann. § 6-13-301 *et seq.* (1987) and repealed in its entirety by Act 294 of 1993, § 7.

In 1989, upon the passage of Act 872, the General Assembly provided a local option for the election of school board directors from single-member zones. Ark. Code Ann. § 6-13-615 (Supp. 1993). The boundaries of the zones would aim at establishing units with "substantially equal population based on the most recent available census information, and, from which, racial minorities may be represented on the board in proportions reflected in the district population as a whole." Ark. Code Ann. § 6-13-615(c).

As a result of this later legislation, a petition was filed to place a proposal on the ballot for the annual school election of September 15, 1992, for "the dividing of East Poinsett County School District Number 14 into six (6) zones of substantially equal voting age population for the purpose of the election of school board members from these zones, *i.e.*, election by single-member zones." In reaction, Marilyn Massey, the appellee, filed an action for mandamus to compel the members of the Poinsett County Election Commission to remove the issue from the ballot on the grounds that the East Poinsett County School District No. 14 was obligated to fulfill the contracts of the former districts pursuant to Ark. Code Ann. § 6-13-220 (1987), which was subsequently repealed by Act 294 of 1993, § 7.

The complaint asserted that the division into six substantially equal zones would favor the former Lepanto district area (which at that point had a considerably larger voting age population than the former Tyronza district), thereby defeating and nullifying the portion of the consolidation agreement, written pursuant to Ark. Code Ann. § 6-13-301 *et seq.*, that provided for an equal division of school board members. In response, the election commissioners contended that the agreement provision calling for split representation and, in particular, Ark. Code Ann. § 6-13-309 (1987), which authorized agreements by directors of former districts, were unconstitutional because they did not assure equal representation on the school board based on a relationship to the population density, geography, and racial composition of the former districts.

The election was allowed to proceed, and single-member districts were approved by a vote of 613 to 430. Ms. Massey then filed against East Poinsett County School District No. 14, seeking to overturn the election results on the basis of the consolidation agreement. She argued that Ark. Code Ann. § 6-13-615 — the provision for elections for directors from single-member zones —unconstitutionally impaired contractual rights. The school district replied that subsequent school laws necessarily applied and that the maintenance of the original model of representation would unconstitutionally dilute the votes of the residents of the former Lepanto district.

In its declaratory judgment, the circuit court found that the measure had passed but that the consolidation agreement was binding on the East Poinsett County School District No. 14. The court noted that the school district did not challenge Ark. Code Ann. §6-13-301 *et seq.* as violative of the United States or Arkansas Constitutions. Specifically, the court found "that portion of the agreement that provides for a school board made up of three members from each of the old districts is binding on the present district." The agreement, the court stated, operated to prohibit and preclude the effect of the election.

Subsequently, the circuit court issued a supplemental opinion in which it found that Ark. Code Ann. § 6-13-615, the statutory authority for the September 1992 election, did not affect the terms of the consolidation agreement. The court further observed that Article 1, § 10, of the United States Constitution and Article 2, § 17, of the Arkansas Constitution prohibit the state from acting to impair the obligation of contracts. Finally, the court explicitly found that "the issue or effect of any federal law, including the Voting Rights Act of 1965, was specifically not presented to the Court."

On appeal, we have determined that the appropriate issue for consideration is the one relating to the impairment of contractual obligations and the authority of the legislature to create, amend, and unmake laws. Because we are able to reach a decision on this basis, it is unnecessary for us to address the voting-rights question.

The United States and Arkansas Constitutions employ the identical phrase in forbidding the enactment of any "law impairing the obligation of contracts." U.S. Const., Art. 1, § 10; Ark. Const., Art. 2, § 17. Writing in *The Federalist*, No. 44 (Jan. 25, 1788), James Madison pronounced such "legislative interferences, in cases affecting personal rights," to be "contrary to the first principles of the social compact and to every principle of sound legislation." The constitutional prohibition, he emphasized, would "inspire a general prudence and industry, and give a regular course to the business of society."

As indicated by Madison's language, the protected contractual relationships fall within the private realm, though, naturally, they redound to the public good. There has long been a distinction between private and public contracts: "[A] private contract may be regarded as one between individuals only and affecting private rights, while a public contract is one to which the state is a party, and which concerns all its citizens." *People* v. *Palmer*, 35 N.Y.S. 222, 225 (N.Y. Sup. Ct. 1895).

In its supplemental opinion, the circuit court found that "The Consolidation Agreement in this case is a valid, binding contract between two former school districts. Therefore, the State, under subsequent law, cannot impair the obligations of a contract, including this Consolidation Agreement." Implicit in the circuit court's conclusion was the erroneous assumption that the pact between the two governmental subdivisions was a private contract.

We have held that Ark. Const., Art. 2, § 17, "prevents only the passage of statutes which would have the effect of impairing obligations previously entered." *Mahurin* v. *Oaklawn Jockey Club*, 299 Ark. 13, 771 S.W.2d 19 (1989). In *Hand* v. *H & R Block, Inc.*, 258 Ark. 774, 528 S.W.2d 916 (1975), we quoted with approval the following passage from *Willys Motors* v. *Northwest Kaiser-Willys*, 142 F.Supp. 469, 471 (D. Minn. 1956):

> There is one important proviso which must be met before legislation which impairs contractual obligations can be upheld; that is, the legislation in question must be enacted for a public, as contrasted with a private, purpose.

258 Ark. at 782, 528 S.W.2d at 921.

Thus, in *National Surety Corp.* v. *Edison*, 240 Ark. 641, 401 S.W.2d 754 (1966), this court, considering a contract arising from the approval of a bond issue for the construction, on land belonging to a non-profit organization, of a building to be used for manufacturing purposes, determined that "there is no doubt that the contract here involved is a public contract as opposed to a *private* contract." *Id.*, 240 Ark. at 643, 401 S.W.2d at 755. (Emphasis in original.) Further, we observed, "We can't imagine anything more public than an election to authorize the issuance of bonds in the amount of $10,000,000." 240 Ark. at 644, 401 S.W.2d at 755.

■    The underlying election in *National Surety Corp.* v. *Edison* served to confirm the public status of the construction contract. Here, similarly, an election was at the very heart of the controversy; indeed, it triggered the controversy. The genesis of the action is clearly indicative of the public nature of the matter. Moreover, the parties to the 1986 consolidation agreement were both school districts, which are state entities supported by constitutionally authorized taxation. Ark. Const., Art. 14, § 3.

■    The Arkansas Constitution vests in the General Assembly the duty and authority to make provisions for the establishment, maintenance, and support of a common, *i.e.*, public, school system in the state. *Saline County Board of Education* v. *Hot Spring County Board of Education*, 270 Ark. 136, 603 S.W.2d 413 (1980). Long ago, this court declared that "the legislative control over the organization of school districts and changes therein is supreme." *Krause* v. *Thompson*, 138 Ark. 571, 575, 211 S.W. 925, 926 (1919).

■    In Act 294 of 1993, § 7, the General Assembly repealed Act 125 of 1961. Prior to that, however, the legislature provided the mechanism utilized by the East Poinsett County School District No. 14 in the election of September 15, 1992. Act 872 of 1989, codified at Ark. Code Ann. § 6-13-613 (Supp. 1993) and still effective, authorized elections for and the establishment of single-member zones. Nowhere has Mrs. Massey cited any authority for restricting the legislature in its power to amend, modify, or even obliterate its previous actions. *Reaves* v. *Jones*, 257 Ark. 210, 515 S.W.2d 201 (1974).

We hold that, under these circumstances, there was no impairment of contract because the contract between the two former districts was public, not private, in nature, and was thus subject to legislative action. In sum, the circuit court erred in its findings regarding the consolidation agreement and in invalidating the effect of the election of September 15, 1992.

Reversed and dismissed.