The Honorable Phillip T. Jacobs State Representative 819 Miller Street Clarksville, AR 72830-2239
Dear Representative Jacobs:
You have requested an Attorney General opinion concerning a situation involving a consolidated school district.
You indicate that your question arises out of the following factual scenario:
The Coal Hill School District and the Hartman School District consolidated in 1983. Prior to consolidating, the board of each school district passed a resolution stating that after consolidation, the high school would be located at Coal Hill, and that the elementary school would be located at Hartman. The board of the consolidated district has now decided to construct an elementary school in Coal Hill, in contravention of these resolutions.
In light of this situation, you have presented the following questions:
 (1) Does the present school board have the legal authority to violate this resolution passed in good faith by both school boards prior to consolidation?
(2) Will violation of this resolution nullify consolidation?
 (3) Can the City of Hartman use taxpayer funds to pursue this issue in court if necessary?
Response
Question 1 — Does the present school board have the legal authority toviolate this resolution passed in good faith by both school boards priorto consolidation?
I am unable to express a definitive opinion in response to this question, because the statutory authority under which this consolidation was effected is unclear. In 1983, at the time of this consolidation, the laws governing school consolidations were found in various chapters of the code. See, e.g., A.C.A. § 6-13-201 et seq., A.C.A. § 6-13-301 etseq., and A.C.A. § 6-13-504 et seq. It is unclear which of the consolidation laws was the statutory authority under which the Coal Hill and Hartman school districts consolidated. Moreover, the consolidation laws that were in effect in 1983 have since been repealed. See, e.g.,
Acts 1993, No. 294. In addition, I have not been provided with any of the documentation reflecting the consolidation agreement between the Coal Hill and Hartman school districts, or any court order concerning the consolidation. For these reasons, certain information that would be crucial to a definitive answer to your question is unavailable to me. For example, I do not know the intent of the parties to the agreement concerning its binding effect, or whether binding resolutions were statutorily authorized by the laws under which the school districts acted in consolidating.
Nevertheless, the Arkansas Supreme Court has issued decisions in others cases that, although not directly on point (and although in some cases rendered under previous statutory law), are similar enough to the situation you have described to provide helpful guidance in addressing your question. In addition, certain general statutory authority is applicable. I can therefore offer an opinion in light of these cases and statutory law.
It is my opinion, as explained more fully below, that the present school board has the authority to decide where the district's school buildings will be located. Whether such a decision would constitute any type of legal violation is a question that must ultimately be decided by a court, in light of all the pertinent facts and in light of the authority under which the consolidation was effected. However, pending such a judicial decision, it is my opinion (as explained more fully below) that an act of this nature by the present school board does not constitute a violation.
The powers of school boards, including the boards of consolidated school districts, are set forth in A.C.A. § 6-13-620. The parts of that statute that are pertinent to your question state:
 The board of directors of each school district in the state shall be charged with the following powers and perform the following duties:
 (1) Have the care and custody of the schoolhouse, grounds, and other property belonging to the district and shall keep it in good repair and in sanitary and sightly condition;
* * *
 (3) Purchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange such sites or schoolhouses. Provided that, in the selection of any school site or the erection of any schoolhouse outside of an incorporated town or city that contains two thousand five hundred (2,500) or more inhabitants, the selection or erection shall be approved by the county board of education before the contract for securing the site or contract for building the schoolhouse is made;
* * *
 (13) Do all other things necessary and lawful for the conduct of efficient free public schools in the district.
A.C.A. § 6-13-620.
The board of consolidated school districts are not excepted from the foregoing statute. That is, the boards of consolidated school districts have all the powers and duties set forth in that statute. The Arkansas courts have long interpreted this statute as allowing school boards wide latitude in governing their districts. See, e.g., Safferstone v. Tucker,235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley,210 Ark. 580, 197 S.W.2d 37 (1946). See also Springdale Board of Educationv. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910 (1987); Leola SchoolDistrict v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905 (1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id. The court in Leola,supra, explained "arbitrary and capricious" action by a school board as being action that is not supportable "on any rational basis." Leola,289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence.Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
Given this wide discretion that the courts accord to school boards in governing their districts, it is my opinion that unless a challenger could factually establish that the present board of the Coal Hill/Hartman consolidated district had abused its discretion or acted contrary to law in deciding to locate an elementary school in Hartman, the courts will uphold that decision. Martin v. Frazier, 291 Ark. 120, 722 S.W.2d 835
(1987).
Unless it were demonstrated that the statutory law that was applicable to this consolidation provided to the contrary, I find it unlikely that the board's decision concerning the elementary school could be deemed a legal "violation" of the previous boards' resolutions. In order for the decision to constitute a compensable violation, the resolutions would have to be found to be binding on the succeeding board. The case law indicates that the Arkansas Supreme Court has been unwilling to find similar agreements binding.
For example, in Brown v. Gardner, 232 Ark. 197, 334 S.W.2d 889 (1960), the court addressed a situation similar to the one you have described. There, the Cherry Hill School District entered into a consolidation agreement with the Perryville School District. Under that agreement, a condition for the consolidation was that a one-room school be maintained at Cherry Hill as long as ten students were in attendance. The Perryville School Board later discontinued the school, even though there were still ten students in attendance. Certain electors and patrons of the former Cherry Hill district sued the Perryville School Board, seeking (among other remedies) dissolution of the consolidation, on the grounds that the agreement had been violated.
The court rejected the argument, stating:
 School District Directors can only enter into agreements which bind their districts and the inhabitants thereof by reason of express statutory authority. School District No. 18 of Jackson County v. Grubbs Special School District, 184 Ark. 863, 43 S.W.2d 765. A person contracting with a Board of Education is presumed to know the limitations of its powers and can acquire no right by contract which said board is not clearly authorized to make. Rural Special School District No. 50 v. First National Bank, 173 Ark. 604, 292 S.W. 1012.
 There is no statutory authority giving school directors the power to enter into contracts agreeing to maintain a school at a certain place indefinitely. The powers of school directors are conferred by law for public purposes, and the exercise thereof, involving as it does a matter of future policy properly subject to change to meet changing conditions, cannot be restricted by an agreement of the nature of the one here involved. To hold otherwise would create a school at Cherry Hill not subject to change by anyone as long as the condition is met.
Brown v. Gardner, 232 Ark. at 199. Accord, Martin v. Frazier,291 Ark. 120, 722 S.W.2d 835 (1987) (upholding the closing of an elementary school in contravention of a consolidation agreement on basis of lack of evidence that such closing was unreasonable, and on basis of broad language of the agreement); Bates v. Orr, 236 Ark. 499, 367 S.W.2d 122
(1963) (upholding school board's choice of alternative site for school in contravention of term of consolidation agreement); Fomby School DistrictNo. 26 v. Williams, 203 Ark. 235, 156 S.W.2d 220 (1941) (holding that term of consolidation agreement requiring that schools be maintained at certain locations was "surplusage" and could not bind school board).
The Brown court cited School Dist. 18 v. Grubbs Spl. Sch. Dist.,184 Ark. 863, 43 S.W.2d 765 (1931), which also provides helpful guidance in addressing the question you have raised. In that case, a consolidation between two school districts was being challenged. One of the bases for the challenge was that one of the school districts should be estopped from availing itself of the benefits of the consolidation, because prior to the consolidation, members of the two school districts' boards had entered into a contract under which they agreed that one of the districts would not acquire territory of the other district. The court rejected this argument, finding that the "contract" in question could not be upheld. The court found various flaws in the validity of the contract, among which was its attempt to prohibit future changes in the two districts' boundaries. Because such changes were clearly within the power of the legislature, a contract that would attempt to inhibit that power was not valid.
The court has maintained a position consistent with the Brown and Grubbs
decisions. For example, in East Poinsett County Sch. Dist. No. 14 v.Massey, 315 Ark. 163, 866 S.W.2d 369 (1993), two school districts included in their consolidation agreement a term addressing the composition of the school board of the consolidated district. Later legislation was inconsistent with this term of the agreement. The court held that this legislation did not constitute an unconstitutional impairment of contract, noting that "`the legislative control over the organization of school districts and changes therein is supreme.'" Id. at 169, quoting Krause v. Thompson, 138 Ark. 571, 575, 211 S.W. 925, 926
(1919).
Unless the statutory law under which Coal Hill and Hartman consolidated was significantly different than the statutory law that was in effect inBrown, Grubbs, and the other above-cited cases, I believe that a court would apply the same reasoning to the resolutions that were passed by the Coal Hill and Hartman school boards, and find that those resolutions are not binding on the board of the consolidated district. Moreover, because the board of the consolidated school district is statutorily empowered to make decisions concerning the location of the district's school buildings, a resolution that attempts to limit this statutory power would not seem to be enforceable.
Accordingly, I conclude that unless a different result would be compelled by the statutory law that provided the authority for the Coal Hill/Hartman consolidation, a court would likely find that the decision of the consolidated board to locate an elementary school in Coal Hill does not constitute a legal violation, even though it is contrary to the resolutions of the previous boards.
Question 2 — Will violation of this resolution nullify consolidation?
It is my opinion that for the reasons stated in response to Question 1, unless the statutory law that governed the consolidation between Coal Hill and Hartman should indicate otherwise, a court presented with this question would likely find that the decision of the board to locate an elementary school in Coal Hill would not have the effect of nullifying the consolidation. Although, again, I have not been provided with a copy of the consolidation agreement or order, it is my opinion that if those documents make the consolidation contingent upon compliance with the resolutions concerning the location of the various schools, they would likely be found by a court to suffer the same infirmities described in my response to Question 1, and that provision would likely not be enforceable.
Question 3 — Can the City of Hartman use taxpayer funds to pursue thisissue in court if necessary?
It is my opinion that the use of taxpayer funds by the City of Hartman to pursue this issue in court is not strictly prohibited by law. Nevertheless, it should be noted that the city's pursuance of this issue in court knowing that the weight of authority is against the city, could give rise to a legal challenge.
Moreover, it should also be noted that even if the weight of authority were in the city's favor and the two boards' resolutions were found to constitute enforceable contracts (although, as indicated in response to Question 1, there is considerable authority for an argument that that they are not enforceable), the city was not a party to those "contracts." In order to maintain its challenge, the city would be placed in the paradoxical position of having to establish that it was the intended beneficiary of the resolutions, which would have the effect of calling into question the legality of the boards' actions in making the resolutions, by indicating that the boards were acting in the interest of an entity other than their school districts.
For these reasons, I conclude that although the use of taxpayer funds to pursue this issue in court is not strictly prohibited by law, it could nevertheless prompt an legal challenge against the city and place the city in the position of making an untenable legal assertion.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh