The Honorable Joe Harris State Representative P.O. Box 781 Osceola, AR 72370-0781
Dear Representative Harris:
You have requested an Attorney General opinion concerning a school annexation.
You indicate that the Blytheville School District No. 5 of Mississippi County, Arkansas annexed the Burdette School District No. 35 in 1971, under the authority of A.S.A. 80-418 [Acts 1947, § 1]. As a condition of the annexation, the Blytheville School District agreed to "guarantee to the present Burdette School District No. 35, that it will operate a grade school of at least grades one (1) through six (6) at the present Burdette School District site at Burdette, Arkansas, for as long as such a grade school operated at Burdette is, in the eyes of the Arkansas State Department of Education, economically feasible and educationally justified[.]" This condition was stated in a school board resolution, as well as on the ballot title when the annexation was presented to the voters. You state that the Blytheville School District now plans to close the Burdette site and build a new school in Blytheville, which the children who formerly attended the Burdette site will attend.
In light of this situation, you have presented the following question:
 Does the Blytheville School District No. 5 have the legal authority to close the Burdette Elementary School site, in light of the district's agreement when annexing the Burdette School District?
RESPONSE
It is my opinion that the Blytheville School District No. 5 does have the legal authority to close the Burdette Elementary School site.
The Arkansas Supreme Court has held that school boards can contractually bind their districts and the inhabitants thereof only in instances in which they have been given express statutory authority to do so. SeeBrown v. Gardner, 232 Ark. 197, 334 S.W.2d 89 (1960). School boards have not been granted statutory authority to enter into contracts agreeing to maintain a school at a certain place indefinitely. Moreover, the statutory authority under which the Blytheville School District No. 5 annexed the Burdette School District (A.S.A. § 80-418, now repealed) did not grant such authority. Indeed, each school board is granted express statutory authority to determine the sites for its school buildings. This authority is set forth in A.C.A. § 6-13-620, which states in pertinent part:
 The board of directors of each school district in the state shall be charged with the following powers and perform the following duties:
 (1) Have the care and custody of the schoolhouse, grounds, and other property belonging to the district and shall keep it in good repair and in sanitary and sightly condition;
* * *
 (3) Purchase buildings or rent schoolhouses and sites therefor and sell, rent, or exchange such sites or schoolhouses. Provided that, in the selection of any school site or the erection of any schoolhouse outside of an incorporated town or city that contains two thousand five hundred (2,500) or more inhabitants, the selection or erection shall be approved by the county board of education before the contract for securing the site or contract for building the schoolhouse is made;
* * *
 (13) Do all other things necessary and lawful for the conduct of efficient free public schools in the district.
A.C.A. § 6-13-620.
The Arkansas courts have long interpreted this statute as allowing school boards wide latitude in governing their districts. See, e.g., Safferstonev. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3, 4 (1962); Isgrig v. Srygley,210 Ark. 580, 197 S.W.2d 39 (1946). See also Springdale Board ofEducation v. Bowman, 294 Ark. 66, 69, 740 S.W.2d 909, 910 (1987); LeolaSchool District v. McMahan, 289 Ark. 496, 498, 712 S.W.2d 903, 905
(1986). The courts have further held that they will not substitute their judgment for that of a school board with regard to policy matters, unless the school board, in enacting the policy in question, abused its discretion or acted arbitrarily, capriciously, or contrary to law. Id.
The court in Leola, supra, explained "arbitrary and capricious" action by a school board as being action that is not supportable "on any rational basis." Leola, 289 Ark. at 498, 712 S.W.2d at 905. It should be noted that the party challenging the school board's policy has the burden of proving the board's abuse of discretion by clear and convincing evidence.Springdale, 294 Ark. at 69, 740 S.W.2d at 910.
Given this wide discretion that the courts accord to school boards in governing their districts, it is my opinion that unless a challenger could factually establish that the present board of the Blytheville School District No. 5 had abused its discretion or acted contrary to law in deciding to close the Burdette Elementary School site, the courts will uphold that decision. Martin v. Frazier, 291 Ark. 120, 722 S.W.2d 835
(1987).
I find it unlikely that the board's decision to close the Burdette site could be deemed unlawful. In order for the decision to constitute a violation, the board's agreement to maintain the Burdette site would have to be found to be binding on the succeeding board. The case law indicates that the Arkansas Supreme Court has been unwilling to find similar agreements binding.
For example, in Brown v. Gardner, 232 Ark. 197, 334 S.W.2d 889 (1960), the court addressed a situation similar to the one you have described. There, the Cherry Hill School District entered into a consolidation agreement with the Perryville School District. Under that agreement, a condition for the consolidation was that a one-room school be maintained at Cherry Hill as long as ten students were in attendance. The Perryville School Board later discontinued the school, even though there were still ten students in attendance. Certain electors and patrons of the former Cherry Hill district sued the Perryville School Board, seeking (among other remedies) dissolution of the consolidation, on the grounds that the agreement had been violated.
The court rejected the argument, stating:
 School District Directors can only enter into agreements which bind their districts and the inhabitants thereof by reason of express statutory authority. School District No. 18 of Jackson County v. Grubbs Special School District, 184 Ark. 863, 43 S.W.2d 765. A person contracting with a Board of Education is presumed to know the limitations of its powers and can acquire no right by contract which said board is not clearly authorized to make. Rural Special School District No. 50 v. First National Bank, 173 Ark. 604, 292 S.W. 1012.
 There is no statutory authority giving school directors the power to enter into contracts agreeing to maintain a school at a certain place indefinitely. The powers of school directors are conferred by law for public purposes, and the exercise thereof, involving as it does a matter of future policy properly subject to change to meet changing conditions, cannot be restricted by an agreement of the nature of the one here involved. To hold otherwise would create a school at Cherry Hill not subject to change by anyone as long as the condition is met.
Brown v. Gardner, 232 Ark. at 199. Accord, Martin v. Frazier,291 Ark. 120, 722 S.W.2d 835 (1987) (upholding the closing of an elementary school in contravention of a consolidation agreement on basis of lack of evidence that such closing was unreasonable, and on basis of broad language of the agreement); Bates v. Orr, 236 Ark. 499, 367 S.W.2d 122
(1963) (upholding school board's choice of alternative site for school in contravention of term of consolidation agreement); Fomby School DistrictNo. 26 v. Williams, 203 Ark. 235, 156 S.W.2d 220 (1941) (holding that term of consolidation agreement requiring that schools be maintained at certain locations was "surplusage" and could not bind school board).
The Brown court cited School Dist. 18 v. Grubbs Spl. Sch. Dist.,184 Ark. 863, 43 S.W.2d 765 (1931), which also provides helpful guidance in addressing the question you have raised. In that case, a consolidation between two school districts was being challenged. One of the bases for the challenge was that one of the school districts should be estopped from availing itself of the benefits of the consolidation, because prior to the consolidation, members of the two school districts' boards had entered into a contract under which they agreed that one of the districts would not acquire territory of the other district. The court rejected this argument, finding that the "contract" in question could not be upheld. The court found various flaws in the validity of the contract, among which was its attempt to prohibit future changes in the two districts' boundaries. Because such changes were clearly within the power of the legislature, a contract that would attempt to inhibit that power was not valid.
The court has maintained a position consistent with the Brown and Grubbs
decisions. For example, in East Poinsett County Sch. Dist. No. 14 v.Massey, 315 Ark. 163, 866 S.W.2d 369 (1993), two school districts included in their consolidation agreement a term addressing the composition of the school board of the consolidated district. Later legislation was inconsistent with this term of the agreement. The court held that this legislation did not constitute an unconstitutional impairment of contract, noting that "`the legislative control over the organization of school districts and changes therein is supreme.'" Id. at 169, quoting Krause v. Thompson, 138 Ark. 571, 575, 211 S.W. 925, 926
(1919).
I believe that a court would apply the same reasoning expressed in the above-discussed cases to the agreement entered into by the Blytheville School District No. 5 as a condition to its annexation of the Burdette School District, and find that that agreement is not binding on the present board. Moreover, because the present board is statutorily empowered to make decisions concerning the location of the district's school buildings, an agreement that attempts to limit this statutory power would not seem to be enforceable.
The fact that the condition for annexation was stated on the ballot title does not change my conclusion regarding this matter. Because school districts are limited in their power to doing what they are given the statutory authority to do, the act of placing an item on a ballot title cannot enlarge the school district's power. That is, placing an item on the ballot cannot give a school board the power to do anything that it is not statutorily empowered to do.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh